**[J-30-2015]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 127 MAP 2014 |
| | : |
| Appellant | : Appeal from the Order of the Berks County |
| | : Court of Common Pleas, Criminal Division, |
| | : at No. CP-06-CR-0004662-2012 dated |
| v. | : August 27, 2013. |
| | : |
| | : ARGUED:  May 5, 2015 |
| JOSE LUIS OLIVO, | : |
| | : |
| Appellee | : |

**OPINION**

**MR. JUSTICE BAER**                    **DECIDED:  November 18, 2015**

In this case, the trial court suspended as unconstitutional a recently enacted statute allowing expert testimony regarding victims' responses to sexual violence, 42 Pa.C.S. § 5920.[1]  The trial court concluded that Section 5920 violated this Court's

---

[1]    In full, Section 5920 provides:

§ 5920. Expert testimony in certain criminal proceedings

(a) Scope.--This section applies to all of the following:

(1) A criminal proceeding for an offense for which registration is required under Subchapter H of Chapter 97 (relating to registration of sexual offenders).

(2) A criminal proceeding for an offense under 18 Pa.C.S. Ch. 31 (relating to sexual offenses).

(continued…)

exclusive control over judicial procedures pursuant to Article V, Section 10(c) of the

Pennsylvania Constitution.[2]  Accordingly, we have jurisdiction pursuant to 42 Pa.C.S.

(…continued)

> (b) Qualifications and use of experts.--
>
> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.
>
> (2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.
>
> (3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.
>
> (4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S. § 5920 (footnote omitted).

[2]      Article V, Section 10 of the Pennsylvania Constitution provides as follows:

> (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and

(continued…)

§ 722(7) (providing the Pennsylvania Supreme Court with exclusive jurisdiction over "[m]atters where the court of common pleas has held [a statute] invalid as repugnant to the Constitution . . . ."). After review, we conclude that Section 5920 does not infringe on our constitutional authority to govern the procedures of the courts. Accordingly, we reverse the trial court and remand for further proceedings.

The facts in this case are limited as it comes to us on preliminary motions. Appellee-Defendant Jose Luis Olivo was arrested on September 17, 2012, and charged with two counts of rape and involuntary deviant sexual intercourse and one count each of indecent assault, indecent exposure, endangering the welfare of children, and corruption of minors.[3] The charges arose from allegations that he sexually abused his paramour's daughter, starting in January 2009 when the victim was four and continuing until February 2012, when she was seven.

On July 26, 2013, four days prior to the scheduled start of trial, Olivo presented a motion *in limine* to prevent the Commonwealth from presenting expert testimony

---

(…continued)

> supervision of all officers of the Judicial Branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions. Notwithstanding the provisions of this section, the General Assembly may by statute provide for the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television.

PA. CONST. art. V, § 10(c).

[3] 18 Pa.C.S. §§ 3121, 3123, 3126, 3127, 4304, and 6301, respectively.

pursuant to Section 5920 regarding child victim responses to sexual violence. Section 5920 applied to Olivo's September 2012 criminal complaint in the case at bar because the Legislature made it effective for prosecutions filed on or after August 28, 2012. The court continued the trial to allow the presentation of argument regarding the motion *in limine*.

As will be discussed in detail in the summary of his arguments to this Court, Olivo contended that the statute unconstitutionally infringed this Court's authority over procedural rules pursuant to Article V, Section 10(c). Assuming *arguendo* that the Legislature could enact evidentiary rules generally, Olivo asserted that Section 5920 was improper because it conflicted with this Court's prior decision in Commonwealth v. Dunkle, 602 A.2d 830 (Pa. 1992).

A detailed review of our decision in Dunkle is necessary to understand the arguments presented by Olivo. In Dunkle, this Court held inadmissible "expert testimony concerning typical behavior patterns exhibited by sexually abused children," where that testimony did not relate to the specific child at issue. Id. at 831. Our holding was supported by our consideration of the "Child Sexual Abuse Syndrome," which the Court judged not to be a generally accepted diagnostic tool for purposes of Frey v. United States, 293 F. 1013 (D.C. 1923). We additionally concluded, based on the then-current research in the field, that the evidence regarding the syndrome was inadmissible as it was not specifically probative of childhood sexual assault as opposed to other types of trauma and merely invited speculation. Next, we deemed inadmissible expert testimony concerning delays and omissions in reporting by child victims of sexual assault because we concluded that the delays and omissions were "easily understood by lay people and did not require expert analysis." Dunkle, 602 A.2d at 836.

While the bulk of our analysis focused upon basic evidentiary determinations, we further opined:

> [W]e do not think it befits this Court to simply disregard longstanding principles concerning the presumption of innocence and the proper admission of evidence in order to gain a great number of convictions. A conviction must be obtained through the proper and lawful admission of evidence in order to maintain the integrity and fairness that is the bedrock of our jurisprudence.

Id. at 838.[4]

While arguably *dicta*, Olivo relied upon this Court's brief reference to the presumption of innocence quoted above to argue that Dunkle constituted an exercise of our constitutional authority over judicial procedure, despite any reference to Article V, Section 10(c) in the text of the opinion.[5]

The Commonwealth opposed Olivo's motion *in limine*. As detailed below, the Commonwealth asserted that Section 5920 is consistent rather than in conflict with our rulemaking authority under Article V, Section 10(c) and the Pennsylvania Rules of Evidence, especially Rule 101(b), which recognizes that rules of evidence may be "governed by statute." Pa.R.E. 101 cmt.[6] The Commonwealth additionally refuted

---

[4] Three justices in Dunkle dissented, arguing in favor of the admissibility of the expert testimony.

[5] Olivo additionally presented a challenge pursuant to Frey, which was rejected by the trial court and has not been pursued on appeal to this Court.

[6] Rule 101 entitled "Scope; Adoption and Citation" provides in full as follows, with emphasis added to highlight the language relied upon by the Commonwealth:

> (a) Scope. These rules of evidence govern proceedings in all courts of the Commonwealth of Pennsylvania's unified judicial system, except as otherwise provided by law.

(continued…)

Olivo's argument that this Court's decision in <u>Dunkle</u> was based on constitutional

(…continued)

(b) Adoption and Citation. These rules of evidence are adopted by the Supreme Court of Pennsylvania under the authority of Article V § 10(c) of the Constitution of Pennsylvania, adopted April 23, 1968. They shall be known as the Pennsylvania Rules of Evidence and shall be cited as "Pa.R.E."

*Comment:* A principal goal of these rules is to construct a comprehensive code of evidence governing court proceedings in the Commonwealth of Pennsylvania. However, these rules cannot be all-inclusive. Some of our law of evidence is governed by the Constitutions of the United States and of Pennsylvania. **Some is governed by statute.** Some evidentiary rules are contained in the Rules of Civil and Criminal Procedure and the rules governing proceedings before courts of limited jurisdiction. Traditionally, our courts have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings, bail hearings, grand jury proceedings, sentencing hearings, parole and probation hearings, extradition or rendition hearings, and others. Traditional rules of evidence have also been relaxed to some extent in custody matters, see, *e.g.,* Pa.R.C.P. No. 1915.11(b) (court interrogation of a child), and other domestic relations matters, see, *e.g.,* Pa.R.C.P. No. 1930.3 (testimony by electronic means).

Decisional law is applicable to some evidentiary issues not covered by these rules. This would include for example, the *corpus delicti* rule, see <u>Commonwealth v. Fears</u>, 575 Pa. 281, 836 A.2d 52 (2003); the collateral source rule, see <u>Boudwin v. Yellow Cab Co.</u>, 410 Pa. 31, 188 A. 2d 259 (1963); and the parol evidence rule, see <u>Yocca v. Pittsburgh Steelers Sports, Inc.</u>, 578 Pa. 479, 854 A.2d 425 (2004). The Pennsylvania Rules of Evidence are not intended to supersede these other provisions of law unless they do so expressly or by necessary implication . . . .

Pa.R.E. 101.

concerns, instead arguing that the case primarily addressed the admissibility of specific evidence under our evidentiary rules.

The trial court granted Olivo's motion *in limine* to bar the expert testimony regarding child victim responses and behaviors offered by the Commonwealth pursuant to Section 5920. Before coming to its conclusion, the court recognized that "[t]he expert would carefully avoid testifying regarding the credibility of this particular victim/witness and only testify as to the general attributes of child sexual assault victims as to delay in reporting, piecemeal reporting and the dynamics of victim's abuse at the hands of older trusted family members." Tr. Ct. Op. at 3.

The trial court interpreted Dunkle as holding that the admission of expert testimony on child victim response and behaviors "would violate the presumption of innocence offered a defendant in every jury trial and notions of fundamental fairness inherent in due process." Id. at 4. The trial court opined that the "proper admission of evidence" was "solely in the province of the Pennsylvania Supreme Court under Article V, [Section] 10 of the Pennsylvania Constitution." Id. The trial court recognized that this Court has suspended statutes that impinge upon our rulemaking authority, citing Commonwealth v. McMullen, 961 A.2d 842, 848 (Pa. 2008) (striking as unconstitutional a statute granting the right to a jury trial in indirect criminal contempt cases), and Payne v. Commonwealth Department of Corrections, 871 A.2d 795 (Pa. 2005) (finding unconstitutional aspects of the Prison Litigation Reform Act as violative of Supreme Court's rulemaking authority).[7]

While the court believed that the introduction of the expert witness testimony would be helpful to juries, it felt constrained to suspend Section 5920 because "the Supreme Court of Pennsylvania has spoken in this specific area in Dunkle and has

---

[7]    See *infra* at 16 and 18 for discussion of Payne and McMullen, respectively.

indicated their ruling implicated Constitutional precepts." Tr. Ct. Op. at 5. The trial court, nonetheless, signaled that it found the dissenting arguments in <u>Dunkle</u> persuasive in light of the research since <u>Dunkle</u>.

The Commonwealth filed a notice of appeal in September 2013.[8] As stated above, this Court has direct review of a trial court's decision to suspend a statute as unconstitutional pursuant to 42 Pa.C.S. § 722(7).

The Commonwealth asserts that the trial court erred in suspending Section 5920 as unconstitutional. First, the Commonwealth addresses this Court's authority under Article V, Section 10(c). It then proceeds to refute the trial court's interpretation of <u>Dunkle</u>. The Commonwealth recognizes this Court's exclusive constitutional authority over rules of procedure. It observes that, while the legislature is tasked with defining substantive crimes, this Court has authority to determine the procedure underlying the adjudication of criminal actions. Commonwealth Brief (Com. Brief) at 12 (quoting <u>McMullen</u>, 961 A.2d at 847 (concluding that "substantive law creates, defines, and regulates rights; procedural law addresses the method by which those rights are enforced")). The Commonwealth further concedes that "the enactment of a procedural statute is unconstitutional." <u>Id.</u> at 13 (citing <u>McMullen</u>, 961 A.2d at 848).

The Commonwealth maintains, however, that evidentiary rules are exceptions, which this Court has recognized in the comments to the Rules of Evidence and in <u>Commonwealth v. Newman</u>, 633 A.2d 1069, 1071 (Pa. 1993). The Commonwealth observes that that the comment to Pa.R.E. 101, quoted above, demonstrates this

---

[8] The Commonwealth initially filed its appeal in the Superior Court. The notice of appeal, *inter alia*, certified that the trial court's "ruling substantially handicaps the prosecution of this case," Notice of Appeal of Sept. 26, 2013, and, thus, asserted an interlocutory appeal as of right under Pa.R.A.P. 311(d). The case was eventually transferred to this Court based upon our exclusive jurisdiction under 42 Pa.C.S. § 722(7).

Court's acknowledgement that some rules of evidence are governed by statute. It further highlights our statement in Newman, discussed further herein, that "[s]ubject only to constitutional limitations, the legislature is free to change the rules governing competency of witnesses and admissibility of evidence." Com. Brief at 10 (quoting Newman, 633 A.2d at 1071). The Commonwealth asserts that the legislature may enact rules of evidence so long as they are not inconsistent with constitutional limitations. Moreover, it emphasizes that Section 5920 tracks Pa.R.E. 702, addressing the requirements for expert testimony, which further supports the conclusion that the evidence does not offend constitutional principles.[9] Accordingly, it maintains that Section 5920 is a constitutional legislative enactment.

The Commonwealth also asserts that the question presented in this case, regarding the constitutionality of the legislative enactment of Section 5920, is distinguishable from the evidentiary decision set forth by this Court in Dunkle. Initially, it emphasizes that the testimony in this case did not involve the "Child Sexual Abuse Syndrome" criticized in Dunkle as unreliable under Frey. Likewise, the Commonwealth

---

[9] Pa.R.E. 702. Testimony by Expert Witnesses

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

contends that, in <u>Dunkle,</u> the Court concluded that expert testimony regarding delayed responses of child victims was inadmissible because the information was within the knowledge of lay jurors, based upon the research available at that time.[10]

The Commonwealth emphasizes that our decision in <u>Dunkle</u> does not speak to constitutional concerns regarding this Court's Article V, Section 10(c) authority over procedural rules. It rejects the trial court's interpretation of <u>Dunkle</u> as implicating our constitutional jurisprudence, noting that the phrase "long-standing principles concerning the presumption of innocence" to be the decision's sole reference to constitutional principles. Com. Brief at 17 (quoting <u>Dunkle</u>, 602 A.2d at 838). Absent from our analysis in <u>Dunkle</u>, the Commonwealth observes, is any particularized discussion of why this genre of evidence would have offended the presumption of innocence so pervasively as to doom Section 5920. Indeed, the Commonwealth maintains that expert testimony under Section 5920 does not offend the presumption of innocence because the expert is not permitted to opine upon the credibility of the specific victim in the case.

The Commonwealth is supported by *amicus curiae* briefs filed by the Pennsylvania District Attorneys Association and the Pennsylvania Coalition Against Rape (PCAR). In addition to the arguments discussed above, the District Attorneys Association further asserts that Section 5920 "creates a substantive right to introduce a particular type of expert witness" and does not address a procedure for a court to follow. District Attorneys Association Brief at 29-30 (citing as support <u>Commonwealth v. Carter</u>, 111 A.3d 1221 (Pa. Super. 2015) (holding, as discussed below, that Section 5920 does

---

[10] Moreover, it contends that the Court's evidentiary determination in <u>Dunkle</u> is outdated given the developed research regarding sexual assault victims over the last two decades. Com. Brief at 16 (citing <u>State v. Obeta</u>, 796 N.W.2d 282, 292-93 (Minn. 2011) (observing that all jurisdictions other than Pennsylvania, which have addressed this issue, "have allowed some form of expert" testimony regarding victim responses to sexual assault)).

not infringe on this Court's exclusive constitutional authority over procedural rulemaking)).

PCAR additionally observes that court-made rules of evidence have long coexisted with legislative actions addressing evidence, such that to prohibit the legislature from enacting laws implicating evidence would "upend centuries of jurisprudence." PCAR Brief at 30. The District Attorneys Association and PCAR provide a list of Pennsylvania statutes addressing evidentiary matters including the competency of witnesses and the admissibility of testimony.[11]

---

[11] Specifically, the District Attorneys Association cites the following statutory provisions: 18 Pa.C.S. §§ 308 (Intoxication or drugged condition); 3104 (Evidence of a victim's sexual conduct); 6104 (Evidence of intent); 40 P.S. § 1303.512 (Expert qualifications); and 42 Pa.C.S. §§ 5911 (Competency of witnesses generally); 5912 (Effects of prior convictions); 5913 (Spouses as witnesses against each other (criminal)); 5917 (Notes of testimony at former trial); 5924 (Spouses as witnesses against each other (civil)); 5933 (Competency of surviving party). District Attorneys Association Brief at 8-10.

*Amicus* PCAR adds the following statutes addressing evidentiary issues: 23 Pa.C.S. § 5104 (Blood test to determine paternity); 35 Pa.C.S. § 450.810 (Records: Evidentiary sufficiency); 42 Pa.C.S. §§ 5328 (Proof of official records); 5916 (Confidential communications to attorney); 5918 (Examination of defendant as to other offenses); 5921 (Interest not to disqualify); 5922 (Disqualification by perjury); 5929 (Physicians not to disclose information); 5930 (Surviving party as witness, in case of death, mental incapacity, etc.); 5942 (Confidential communications to news reporters); 5943 (Confidential communications to clergymen); 5944 (Confidential communications to psychiatrists or licensed psychologists; 5945 (Confidential communications to school personnel); 5945.1 (Confidential communications with sexual assault counselors); 5945.2 (Confidential communications to crime stopper or similar anticrime program); 5945.3 (Confidential communications with human trafficking caseworkers); 5948 (Confidential communications to qualified professionals); 5985.1 (Admissibility of certain statements); 6103 (Proof of official records); 6106 (Certified exemplifications of records); 6108 (Business records); 6111 (Handwriting); and 75 Pa.C.S. §§ 1547 (Chemical testing to determine amount of alcohol or controlled substance); 3368 (Speed timing device). PCAR Brief at 28-29.

Olivo responds in support of the trial court's conclusion that Section 5920 violates the separation of powers by infringing upon this Court's constitutional authority over courtroom practice and procedure. Olivo reiterates that Article V, Section 10(c) entrusts to this Court authority over judicial procedure except where the Constitution provides otherwise. He observes that we have stated that "the judiciary alone" has "power over rulemaking." Olivo Brief at 7 (quoting, indirectly, In re 42 Pa.C.S. § 1703, 394 A.2d 444, 451 (Pa. 1978)). Olivo further relies upon In re 42 Pa.C.S. § 1703, discussed below, where this Court, based upon our Article V, Section 10(c) authority, refused to comply with provisions of the Public Agency Open Meeting Law, which made the law applicable to the rule-making functions of the Supreme Court. Olivo additionally observes that an amendment to Article V, Section 10, was necessary to provide the legislature with specific authority to enact a procedural statute allowing child victims to testify via close-circuit television.[12] He argues that a similar constitutional amendment would be required to provide authority for the legislature to address the admissibility of expert testimony pertaining to victim responses to sexual violence. As no constitutional provision addresses this subject, he contends that Section 5920 "clearly, palpably, and plainly violates the Constitution as an unlawful exercise of judicial power." Olivo Brief at 8.

He rejects the suggestion that Section 5920 is not a procedural rule. Olivo observes that in <u>Payne</u> we addressed both proper substantive statutes and

---

[12] Specifically, the 2003 amendment provided for the following language to be added to Section 10(c): "Notwithstanding the provisions of this section, the General Assembly may by statute provide for the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television." <u>See</u> <u>also</u> <u>Bergdoll v. Kane</u>, 731 A.2d 1261, 1270 (Pa. 1999) (striking a prior attempt to add similar language to the constitution as violative of the single subject rule).

unconstitutional procedural sections.  As noted below, we found provisions governing the dismissal of prison reform petitions to be substantive, but a provision addressing automatic dissolution of a temporary restraining order procedural.  Olivo additionally observes that in Commonwealth v. Sorrell, 456 A.2d 1326 (Pa. 1982), and McMullen, 961 A.2d 842, we held that the right to a jury trial is a procedural right.  In contrast, Olivo notes that the authority to issue a stay of execution was deemed substantive in Commonwealth v. Morris, 771 A.2d 721 (Pa. 2001).  He argues that Section 5920 is not substantive because it does not define the relief to which a litigant is entitled nor does it define, enlarge, or restrict any elements of an offense.

He contends instead that Section 5920 is a procedural rule intended to supplant this Court's holding in Dunkle, which has been reaffirmed by this Court.  Olivo Response Brief at 5-6 (citing Commonwealth v. Alicia, 92 A.3d 753, 761-63 (Pa. 2014) (citing Dunkle); Commonwealth v. Gallagher, 547 A.2d 355 (Pa. 1988) (finding expert testimony regarding "rape trauma syndrome" inadmissible); and Commonwealth v. Seese, 517 A.2d 920 (Pa. 1986) (holding inadmissible expert testimony regarding child sexual assault victims)).  He argues that only this Court has the authority to overrule Dunkle and to promulgate procedural rules of evidence.  Olivo emphasizes that we held in McMullen that if "the legislature enacts a procedural statute, that statute is unconstitutional," regardless of whether the statute conflicts with court-made rules.  McMullen, 961 A.2d at 848.  Olivo faults the Superior Court's reasoning in Carter, relied upon by *amici* and discussed below, because that court did not address the separation of powers issue but merely cited a prior Superior Court decision stating that the legislature can enact evidentiary rules without fully considering the distinctions between substantive and procedural rules.  He further argues that citation to the quotation in Newman suggesting that "the legislature is always free to change the rules governing

competency of witnesses and admissibility of evidence" is flawed because the parties in that case did not raise a separation of powers issue. Olivo Response Brief at 17 (quoting Newman, 633 A.2d at 1071). Instead, Olivo points to a distinction between what he views as substantive provisions regarding "privileges provided to spouses" in Newman and procedural provisions relating to "the method [of] introducing evidence to prove a criminal offense" in the case at bar. Olivo Response Brief at 18.

Additionally, Olivo claims that Section 5920 conflicts with this Court's decision in Dunkle, holding inadmissible expert testimony regarding victim responses to sexual assaults. He argues that the evidence the Commonwealth sought to introduce under Section 5920 is indistinguishable from the expert testimony deemed inadmissible in Dunkle, where the Court found error in permitting "an expert to explain why sexually abused children may not recall certain details of an assault, why they may not give complete details, and why they may delay reporting the incident." Olivo Brief at 9 (quoting Dunkle, 602 A.2d at 831). He observes that the Court continued, "[W]e hold that the expert should not have been permitted to testify about behavior patterns generally exhibited by abused children and that the error requires reversal." Olivo Brief at 10 (quoting Dunkle, 602 A.2d at 836). He contends that the legislature cannot overrule Dunkle through the enactment of Section 5920.

Moreover, Olivo argues that allowing the expert's testimony would devolve into a battle of the experts that would interfere with the jury's interpretation of the victim's non-verbal conduct and any inconsistencies in the testimony. Olivo Brief at 10. He reiterates the trial court's conclusion that testimony admissible under Section 5920 "would violate the presumption of innocence offered a defendant in every jury trial and notions of fundamental fairness inherent in due process." Id. (quoting Tr. Ct. Op. at 4). Accordingly, he seeks our affirmance of the trial court's conclusion that Section 5920 is

an unconstitutional encroachment of this Court's authority over judicial procedure, that it violates our holding in Dunkle, and that it violates the presumption of innocence.

The Commonwealth presents a pure issue of law, which we review *de novo*. Commonwealth v. Ludwig, 874 A.2d 623, 628 n.5 (Pa. 2005). As we have repeatedly observed, "a legislative enactment enjoys the presumption of constitutionality." Payne, 871 A.2d at 800. A party challenging a legislative action bears the heavy burden of demonstrating that the statute "clearly, palpably, and plainly violates the constitution." Id.

As noted, this case requires our consideration of whether Section 5920's provision allowing for expert testimony regarding victim responses to sexual assaults violates our exclusive constitutional "power to prescribe general rules governing practice, procedure and the conduct of all courts" under Article V, Section 10(c) of the Pennsylvania Constitution. See, e.g., Payne, 871 A.2d at 801 (recognizing this Court's exclusive power over judicial procedure). For the following reasons, we conclude that Section 5920 does not constitute an impermissible procedural rule but rather is a proper exercise of legislative authority to enact a rule of evidence.

During the early years of our Commonwealth, our authority over procedural rulemaking initially was "inherent in the constitutional scheme," but later became explicit through a legislative grant of authority in 1937, as codified at 17 P.S. § 61, which provided that any inconsistent statute would be suspended. In re 42 Pa.C.S. § 1703, 394 A.2d at 447. In 1968, however, this Court's authority gained constitutional imprimatur through the adoption of Article V of the Pennsylvania Constitution. Article V "vests in the Supreme Court 'general supervisory and administrative authority over all the courts,' PA. CONST. art. V, § 10(a)." Payne, 871 A.2d at 800. The section further provides that "[a]ll laws shall be suspended to the extent that they are inconsistent with

rules prescribed under these provisions." PA. CONST. art. V, § 10(c); see also In re 42 Pa. C. S. § 1703, 394 A.2d at 447.

In considering similar challenges to legislative acts, we have opined that "the threshold inquiry in determining whether a particular statute violates Article V, Section 10(c), is whether the statute is procedural or substantive in nature." Payne, 871 A.2d at 801. We have often recognized that the distinction between procedural and substantive actions engenders little consensus. Id. Nonetheless, we have opined that, "[a]s a general rule, substantive law is that part of the law which creates, defines and regulates rights, while procedural laws are those that address methods by which rights are enforced." Id. (citations omitted); see also McMullen, 961 A.2d at 847.

Our relatively recent decision in Payne v. Commonwealth Department of Corrections, 871 A.2d 795 (Pa. 2005), provides an excellent starting point as that case presented several provisions of the Prison Litigation Reform Act, which arguably straddled the line between substantive and procedural. We deliberated on the constitutionality of 42 Pa.C.S. § 6602(e), providing for a court to dismiss prison condition litigation if an allegation of indigency was untrue or if the litigation was frivolous or malicious. We held that the statute did not violate our Article V, Section 10 authority because the statute was substantive rather than procedural in nature:

> A cursory review of this section may lead one to believe that the Legislature is creating a procedure by which the court shall dismiss prison conditions litigation. Upon closer scrutiny, however, we conclude that Section 6602(e) defines the rights of prisoners by setting forth the circumstances under which the right to file prison condition litigation shall be summarily denied. Rather than establishing a method or procedure to enforce a substantive right, Section 6602(e) regulates the substantive right to file prison conditions litigation due to the Legislature's belief that such claims are particularly prone to being frivolous and therefore subject to summary dismissal.

Payne, 871 A.2d at 802 (citing Morris, 771 A.2d at 738 (holding that a statute regarding a stay of execution was a substantive act because it "define[d] the appropriate circumstances for securing the substantive right" to a stay rather than setting forth a process for enforcing the stay)) (emphasis omitted).

This Court next grappled in Payne with the constitutionality of the three-strikes provision of the Prison Litigation Reform Act, 42 Pa.C.S. § 6602(f), under which a court may dismiss prison condition litigation "[i]f the prisoner has previously filed prison conditions litigation and . . . three or more of these prior civil actions have been dismissed" as frivolous or an action was determined to have been filed in bad faith, absent a credible allegation of imminent danger of serious bodily injury.  Payne, 871 A.2d at 803-04.  The prisoner in Payne claimed that the statute was procedural and thus violative of our constitutional authority over judicial procedure under Article V, Section 10.  Again, the Court concluded that while the statute appeared to be a procedural mechanism for the dismissal of prison litigation, at heart it was a "substantive provision because it defines the parameters under which the right to relief will be denied in a prison conditions action."  Id. at 804.

Next, the Court considered Section 6605(a) of the Prison Litigation Reform Act, authorizing a court to enter a temporary restraining order or preliminary injunction and for such injunction to expire automatically after ninety days.  Unlike the sections addressed above, we concluded that this section did not "create, define or regulate prisoner's rights" but instead "sets forth a procedure which the court must follow when preliminary injunctions are entered in a prison conditions case."  Id. at 804.  As the section only spoke to procedure, we deemed this section unconstitutional as violative of our exclusive authority under Article V, Section 10(c).  Id.  We observed that the section also was inconsistent with Pa.R.C.P. 1531, which did not provide for automatic

dissolution of a preliminary injunction. We additionally "emphasize[d] that it is not the significance of the procedure contained in the statutory provision that is constitutionally problematic, but rather the fact the statute contains a court procedure." Id. at 805.

Finally, we considered Section 6602(a)-(c) of the Prison Litigation Reform Act, which addressed the payment of filing fees and the method to seek *in forma pauperis* status. We held the statute unconstitutional as an attempt to enact a procedural statute in violation of our exclusive authority where the section "sets forth the method by which inmates enforce their rights to file prison conditions litigation, *i.e.,* by the payment of a filing fee." Id. at 806. We further noted that the section conflicted with this Court's *in forma pauperis* procedure.

We again considered the procedural-substantive dichotomy in Commonwealth v. McMullen, 961 A.2d 842 (Pa. 2008), where we held unconstitutional a statute that provided a right to a jury trial in indirect criminal contempt proceedings involving a restraining order or injunction and limiting the relevant sentence to fifteen days. We recognized that we had previously held that the right to a jury trial was "not a 'substantive right,' but a right of procedure through which rights conferred by substantive law are enforced." Id. at 847-48 (quoting Sorrell, 456 A.2d at 1329). We notably altered our prior analysis applied in Payne, where we weighed whether a procedural statute conflicted with any Court promulgated rules. Instead, in McMullen, we opined that if a statute is procedural it is unconstitutional *per se* as "[o]therwise, a clearly unconstitutional procedural statute would be constitutional unless this Court promulgated a rule inconsistent with it." Id. at 848.[13]

---

[13] In McMullen, we additionally rejected as unconstitutional the legislative attempt to set the limit of punishment for indirect contempt, which we concluded was within the power of the courts. We explained that, "[w]hile the legislature generally may determine the appropriate punishment for criminal conduct, indirect criminal contempt is an offense (continued…)

In the cases set forth above, this Court determined whether various statutes encroached upon our constitutional authority over judicial procedure. However, these provisions did not address evidentiary statutes, as in the case at bar. In contrast, in Commonwealth v. Newman, 633 A.2d 1069 (Pa. 1993), we considered an evidentiary statute involving the privilege not to testify against one's spouse. While Newman addressed constitutional challenges based on the *ex post facto* clause, we broadly opined, "Subject only to constitutional limitations, the legislature is always free to change the rules governing competency of witnesses and admissibility of evidence." Id. at 1071.

The Superior Court recently addressed a similar separation of powers challenge to Section 5920 in Commonwealth v. Carter, 111 A.3d 1221 (Pa. Super. 2015). The court identified its own precedent holding evidentiary statutes constitutional based upon this Court's decision in Rich Hill Coal Co. v. Bashore, 7 A.2d 302 (Pa. 1939), where "[w]e recognize[d] the right of the legislature to create or alter rules of evidence."[14]

---

(…continued)
against the court's inherent authority, not necessarily against the public." Id. at 850. Accordingly, we struck the statute as an unconstitutional invasion of our exclusive authority to punish for indirect criminal contempt. Id.

[14]    It should be noted that while this Court approved generally of the legislative ability to enact rules of evidence, we nonetheless found various sections of the Workers' Compensation Act invalid. We further opined that the legislative power to enact evidentiary statutes was limited as follows:

> (1) It is at least doubtful if the legislature can, under the guise of creating a 'rule of *evidence*,' make something evidence which is in fact *not* evidence, (2) If in fact the legislature is attempting to regulate a rule of evidence, 'its regulation must be impartial and uniform'.

Rich Hill Coal Co., 7 A.2d at 319 (quoting Cooley on Constitutional Limitations, 8th ed., Vol. 2, p. 768.) (emphasis in original).

Carter, 111 A.3d at 1223 (quoting Rich Hill Coal Co., 7 A.2d at 319). The Superior Court opined that this Court reaffirmed Rich Hill Coal Co. in Newman, where, as noted above, we held that that "the legislature is always free to change the rules governing the competency of witnesses and the admissibility of evidence." Carter, 111 A.3d at 1223-24 (quoting Newman, 633 A.2d at 1071).

Applying this precedent, the Superior Court concluded that "Section 5920 is really a rule regarding the admissibility of evidence, not a procedural rule." Id. at 1224. Furthermore, the Superior Court rejected the defendant's claim that Section 5920 conflicted with Dunkle, which it distinguished by observing that "Dunkle predates Section 5920 and was not based on constitutional grounds but on existing case law and rules of evidence." Id. Accordingly, the Superior Court rejected the defendant's claim that Section 5920 violated our constitutional authority over procedural rules.[15]

We agree with the analysis of the Commonwealth and the Superior Court in Carter. Section 5920 is clearly a rule of evidence, which we have acknowledged can be "governed by statute." Pa.R.E. 101 cmt.; see also Newman, 633 A.2d at 1071. Moreover, we conclude that Section 5920 is substantive rather than procedural as it permits both parties to present experts to "testify to facts and opinions regarding specific types of victim responses and victim behaviors." 42 Pa.C.S. § 5920. It does not dictate how the evidence is presented, and thus it is distinguishable from the provision amended to Article V, Section 10(c) in 2003 providing the General Assembly with the

---

[15] We acknowledge that the Superior Court in Carter relied in part on its observation that Section 5920 did not conflict with any rule of procedure. Id. at 1224. We reject and deem unnecessary this aspect of the Carter rationale based upon our contrary holding in McMullen. As discussed *supra* at 18, we opined in McMullen that a procedural statute is unconstitutional *per se* because "[o]therwise, a clearly unconstitutional procedural statute would be constitutional unless this Court promulgated a rule inconsistent with it." McMullen, 961 A.2d at 848.

authority to enact statutes to address purely procedural issues involved in "the manner of testimony of child victims" and specifically allowing for statutes providing for testimony by videotaped deposition or close-circuit television. PA. CONST. art. V, § 10(c). Section 5920 by contrast does not provide for the manner of the presentation of expert testimony but merely provides the substantive authorization to present that testimony. Accordingly, we find Section 5920 to be a substantive rule of evidence that does not violate our Article V, Section 10(c) authority over procedural rules.

Finally, we reject the trial court and Olivo's reliance on our prior decision in Dunkle. As stated above, Dunkle provided a thorough review of arguments regarding the admissibility of expert testimony concerning victim responses to sexual violence. Our conclusion hinged on the Court's consideration of the research supporting the admission of the evidence. The decision was rooted in a factual assessment of the evidence as a part of a Frey analysis, as well as other admissibility considerations such as our conclusion that the expert testimony would invite speculation by the jury and that the information was within the knowledge of a lay juror, based upon the then-current research. We were not faced with questions regarding the constitutional authority of the General Assembly to pass a statute providing for the admissibility of this type of expert testimony. While it is accurate that we mentioned the defendant's presumption of innocence in a brief phrase supporting our holding of inadmissibility, the statement is *dicta* and was never intended to control our assessment of the constitutionality of legislative enactments such as Section 5920.

We conclude that Section 5920 does not violate our authority under Article V, Section 10(c) of the Pennsylvania Constitution nor our decision in Dunkle. Accordingly, we reverse the decision of the trial court suspending 42 Pa.C.S. § 5920 and remand for further proceedings.

Jurisdiction relinquished.

Madame Justice Todd and Mr. Justice Stevens join the opinion.

Mr. Chief Justice Saylor files a concurring opinion.

Mr. Justice Eakin files a dissenting opinion.