Filed 6/6/16  P. v. Reyes CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b).  This opinion has not been certified for publication or ordered published for purposes of rule 977.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063250 |
| v. | (Super.Ct.No. FVI1403462) |
| ENRIQUE HERNANDEZ REYES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed in part, reversed in part, and affirmed as modified.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and A. Natasha Cortina and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Enrique Hernandez Reyes sexually abused his stepdaughter.  He started when she was about 9, by grabbing her buttocks; he worked his way up to digital

1

penetration when she was about 10 and sexual intercourse when she was 13 or 14. When she was 17, she gave birth to his child. As a result, a jury found defendant guilty of nine sexual offenses, and the trial court sentenced him to a total of 45 years 8 months in prison.

Defendant now contends that expert testimony regarding child sexual abuse accommodation syndrome (CSAAS) "should be held inadmissible in California for all purposes." As existing California case law is to the contrary, we disagree.

Defendant also contends that three counts were barred by the statute of limitations. The People concede the error. Hence, we will reverse those convictions and strike the terms imposed on those counts. This will reduce the total sentence by two years. We will affirm the judgment as thus modified.

## I

## FACTUAL BACKGROUND

Defendant was the stepfather of the victim, Z.E.[1] Starting when Z.E. was about 9, defendant would grab and squeeze her buttocks. When she was about 10, he started digitally penetrating her vagina. Once, when she was about 13, he made her orally

---

[1] The trial court ordered the victim referred to solely by her first name. Her first name, however, was unusual and striking. It seems likely that she could be identified, if not by her first name alone, then by her first name in combination with her date of birth, which was material to prove the elements of some of the charged crimes and also to establish the approximate dates of those crimes.

The better practice would have been to order the victim referred to as Jane Doe. (See Pen. Code, § 293.5.) Even in the absence of such an order, however, we have the authority to accord the victim protective nondisclosure by using her initials. (See Cal. Style Manual (4th ed. 2000) § 5.9.)

2

copulate him. When Z.E. was 13 or 14, defendant forcibly raped her. Thereafter, he had sexual intercourse with her on a regular basis — about once a week until she was 16, about twice a week until she was 19, and thereafter four times a week or more. When she was 17, she gave birth to defendant's child. Defendant used threats — including threats to harm Z.E.'s mother and, later, threats to take away her child — to prevent her from resisting or reporting the sexual abuse.

When Z.E. was 23, defendant showed up at a restaurant where she and her then-boss were having lunch. Defendant said that Z.E. was his wife and the mother of his child; he called her a whore, and he challenged her boss to a fight. That night, defendant went to Z.E.'s workplace; he was yelling, claiming again to be her husband, and demanding to report that she was having an affair with her boss. Z.E.'s boss told her she was in danger of losing her job. Z.E. then went to the police and reported the sexual abuse.

Dr. Jody Ward, an expert psychologist, testified regarding CSAAS. We will discuss her testimony in more detail in part III.A, *post*.

II

PROCEDURAL BACKGROUND

A jury found defendant guilty as follows:

| Alleged date | Count |
|---|---|

3

| Alleged date | Count |
|---|---|
| November 7, 2000 through November 6, 2005 (i.e., when Z.E. was aged 9 through 13) | Count 1: Continuous sexual abuse of a child (Pen. Code, § 288.5, subd. (a)) |
| November 7, 2005 through November 6, 2006 (i.e., when Z.E. was aged 14) | Count 2: Forcible rape (Pen. Code, § 261, subd. (a)(2))<br><br>Count 3: A lewd and lascivious act on a child aged 14 or 15 committed by a person at least 10 years older (Pen. Code, § 288, subd. (c)(1)) |
| November 7, 2006 through November 6, 2007 (i.e., when Z.E. was aged 15) | Count 4: Forcible rape<br><br>Count 5: Forcible oral copulation (Pen. Code, § 288a, subd. (c)(2)(A))<br><br>Count 6: A lewd and lascivious act on a child aged 14 or 15 committed by a person at least 10 years older |
| November 7, 2007 through September 30, 2008 (i.e., when Z.E. was aged 16, but before she conceived) | Count 7: Unlawful sexual intercourse with a minor more than three years younger (Pen. Code, § 261.5, subd. (c)) |
| October 2, 2008 through November 6, 2008 (i.e., when Z.E. conceived) | Count 8: Unlawful sexual intercourse with a minor more than three years younger (Pen. Code, § 12022.7, subd. (a))[2] |
| November 7, 2008 through November 6, 2009 (i.e., when Z.E. was aged 17) | Count 9: Unlawful sexual intercourse with a minor more than three years younger |

Defendant was sentenced to a total of 45 years 8 months in prison, along with the usual fines, fees, and requirements.

_____

**2** This count was charged separately so that it could be accompanied by a great bodily injury enhancement allegation (based on Z.E.'s pregnancy). The jury, however, hung on the enhancement.

III

EVIDENCE REGARDING

CHILD SEXUAL ABUSE ACCOMMODATION SYNDROME

Defendant contends that the admission of expert testimony regarding CSAAS necessarily violates due process.

A.    *Additional Factual and Procedural Background*.

    1.    *Motion in limine*.

The prosecution filed a motion in limine to admit Dr. Ward's testimony regarding CSAAS.  In pretrial proceedings, the trial court asked defense counsel:

"[THE COURT]:  . . . [D]o you have anything to say about the admission of that?

"[DEFENSE COUNSEL]:  Not the admission.  Only if it is relevant to any issue in the case.

"[THE COURT]:  Yeah.  Are you making an objection?

"[DEFENSE COUNSEL]:  I am making an objection."

Later, defense counsel also said, "Just for the record, I want to object to [the prosecutor] calling [Dr. Ward]."

The trial court ruled that Dr. Ward could testify.  It explained, "I'm of the opinion that there's a sufficient offer of proof to find relevant that testimony . . . ."

    2.    *Trial testimony*.

Dr. Ward defined CSAAS as a pattern of behaviors common to many sexually abused children.  It cannot be used to tell whether sexual abuse actually occurred.

However, it can be helpful in understanding why sexually abused children do what they do. Dr. Ward admitted that she had no information about defendant or the victim.

CSAAS consists of five behaviors:

1. Secrecy: Sexually abused children tend to keep the abuse secret for "very long periods of time."

2. Helplessness: "Children . . . don't have the means at their disposal to get themselves out of a sexually abus[iv]e situation."

3. Entrapment and accommodation: A child will put up with sexual abuse, and may even appear to be cooperating with it. This may be because the child has no other options, the child is dependent on the abuser, and/or the child is afraid that reporting the sexual abuse will break up the family.

4. Delayed, unconvincing disclosure: "[T]wo thirds of [sexually abused] children do not report [the] sexual abuse until adulthood, and many never report it at all." The initial disclosure may be "tentative."

5. Retraction or recantation: "[S]ometimes children will back ped[al] on their allegations to try to keep their families together." It is very common for the non-offending parent to refuse to believe the child.

Not all sexually abused children exhibit CSAAS. Moreover, not all children who do exhibit CSAAS exhibit all five behaviors. "[S]ecrecy and helplessness are apparent in all cases of sexual abuse because all cases occur in secret, and [all] children are helpless in the face of adults . . . ." By contrast, retraction or recantation occurs less often than the other four behaviors.

6

3. *Jury Instruction*.

The jury was instructed:

"You heard testimony from Dr. Jody [W]ard regarding child sexual abuse accommodation syndrome.  Dr. Jody Ward's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him.

"You may consider this evidence only in deciding whether or not [Z.E.'s] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."  (CALCRIM No. 1193.)

B.    *Discussion*.

1.    *Forfeiture*.

Defense counsel forfeited defendant's present claim by failing to object on due process grounds below.  (Evid. Code, § 353, subd. (a); *People v. Heard* (2003) 31 Cal.4th 946, 972, fn. 12.)  The only specific objection he raised — and thus the only objection the trial court ruled on — was based on relevance.  "A general objection to the admission or exclusion of evidence, or one based on a different ground from that advanced at trial, does not preserve the claim for appeal."  (*People v. Marks* (2003) 31 Cal.4th 197, 228.)

2.    *Merits*.

As an alternative ground to forfeiture, we also reject this contention on the merits.

"[I]t has long been held that in a judicial proceeding presenting the question whether a child has been sexually molested, CSAAS is admissible evidence for the limited purpose of disabusing the fact finder of common misconceptions it might have

7

about how child victims react to sexual abuse. [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 418.)

"Expert testimony on the common reactions of a child molestation victim is not admissible to prove the sex crime charged actually occurred. However, CSAAS testimony 'is admissible to rehabilitate [the molestation victim's] credibility when the defendant suggests that the child's conduct after the incident — e.g., a delay in reporting — is inconsistent with his or her testimony claiming molestation. [Citations.]' [Citation.] '"Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior . . . ." [Citation.]' [Citation.]" (*People v. Sandoval* (2008) 164 Cal.App.4th 994, 1001-1002.)

There are "two requirements to the admissibility of child sexual abuse accommodation syndrome evidence:

"First, the expert's testimony must be narrowly tailored to the purpose for which it is admissible, i.e., the prosecution is obligated to 'identify the myth or misconception the evidence is designed to rebut' and the testimony must be limited to exposing the misconception by explaining why the child's behavior is not inconsistent with his or her having been abused. [Citation.]

"Second, if requested the jury must be admonished '"that the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true . . . . The evidence is admissible *solely* for the purpose of showing that the

victim's reactions as demonstrated by the evidence are not inconsistent with having been molested.'" [Citations.]" (*People v. Stark* (1989) 213 Cal.App.3d 107, 116.)

Defendant does not complain that the trial court misapplied these rules in this case. Rather, he claims that the admission of evidence regarding CSAAS *necessarily* violates due process in *every* case. However, this contention has been authoritatively rejected. "Introduction of CSAAS testimony does not by itself deny . . . due process." (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1747.)

In addition, the California Supreme Court has all but held that CSAAS evidence is admissible. In *People v. McAlpin* (1991) 53 Cal.3d 1289, the issue before the court was whether an expert could testify that it is not unusual for a parent to fail to report a known molestation of his or her child. (See *id.* at pp. 1298-1299.) The Supreme Court drew a "direct analogy" to expert testimony regarding CSAAS. (*Id.* at p. 1300.) It noted that the courts of appeal had held that "expert testimony on [CSAAS] is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident — e.g., a delay in reporting — is inconsistent with his or her testimony claiming molestation. [Citations.]" (*Id.* at pp. 1300-1301, fn. omitted.) It concluded: "In the case at bar the challenged expert testimony dealt with the failure not of the child victim, but of the child's parent, to report the molestation. *Yet the foregoing rules appear equally applicable in this context*." (*Id.* at p. 1301, italics added.) Admittedly, *McAlpin* itself did not deal directly with the admissibility of evidence

9

regarding CSAAS. Nevertheless, the Supreme Court clearly deemed the lower court holdings regarding CSAAS to be correct.

Defendant argues that secrecy and helplessness will be present whenever a child alleges sexual abuse, whether the allegations are true or false. Defendant also argues that, while some child victims will delay disclosure, others will not; "[t]he result is that the 'syndrome' applies to every child regardless of how the child behaves . . . ." This overlooks the principle, however, that CSAAS is not intended to reveal whether the child was in fact sexually abused — as Dr. Ward expressly cautioned, and as trial court expressly instructed. Rather, it is intended to explain why a child who *has* been sexually abused *might* delay disclosure. Thus, it prevents the jurors from drawing the unwarranted conclusion that, because a child did delay disclosure, that child must be lying. The fact that some children who have been sexually abused disclose immediately or that some children who have not been sexually abused "delay disclosure" (i.e., fabricate abuse that supposedly occurred years earlier) does not make the evidence either irrelevant or misleading for this purpose.

Defendant also argues that there is a danger that the jury will misuse CSAAS evidence as evidence that the molestation actually occurred rather than as evidence to rehabilitate the victim's credibility. As mentioned, however, the jury must be instructed that CSAAS evidence is not evidence that a molestation actually occurred; the jury was so instructed here. "Absent evidence to the contrary, . . . we presume the jurors followed the[] instructions. [Citation.]" (*People v. Masters* (2016) 62 Cal.4th 1019, 1071.) We see no reason why the jury could not follow this instruction in this case.

10

Finally, defendant claims that CSAAS evidence is inadmissible in three jurisdictions. (*Newkirk v. Commonwealth* (Ky. 1996) 937 S.W.2d 690, 695 [CSAAS evidence "lacked relevancy and invaded the province of the jury by expressing an opinion on the ultimate issue of guilt or innocence"]; *Commonwealth v. Dunkle* (1992) 529 Pa. 168, 173-185 [602 A.2d 830, 832-838] [CSAAS evidence is not generally accepted in the relevant field and infringes jury's right to determine credibility];[3] *State v. Bolin* (Tenn. 1996) 922 S.W.2d 870, 873 [CSAAS evidence cannot reliably determine abuse and invades the province of the jury to determine credibility].) Absent a tally of the jurisdictions that *admit* CSAAS evidence, we do not find these isolated citations persuasive. In any event, stare decisis counsels us to follow *McAlpin*, *Patino*, and similar California authorities.

IV

STATUTE OF LIMITATIONS ON COUNTS 7 THROUGH 9

Defendant contends that counts 7 through 9, which charged unlawful sexual intercourse, are barred by the statute of limitations. The People concede the error. Accordingly, we will discuss it only summarily.

Defendant did not raise this contention below. However, "when the charging document indicates on its face that the action is time-barred, a person convicted of a

---

[3] Actually, in 2012, *Dunkle* was abrogated by the enactment of 42 Pennsylvania Consolidated Statutes section 5920, which provides that, when certain sexual offenses are charged, a qualified expert "may testify to facts and opinions regarding specific types of victim responses and victim behaviors." (See *Commonwealth v. Olivo* (Pa. 2015) 127 A.3d 769, 771-781.)

11

charged offense may raise the statute of limitations at any time," including on appeal. (*People v. Williams* (1999) 21 Cal.4th 335, 341.)

The limitations period applicable to the unlawful sexual intercourse charges was three years. (Pen. Code, § 801.) There were no circumstances that would trigger tolling. (See Pen. Code, § 804.) According to the information as well as the evidence at trial, these counts were committed in 2008 or 2009. The information was filed in 2014 — more than three years later. Accordingly, these counts were time-barred.

V

DISPOSITION

The convictions on counts 1 through 6 are affirmed. The convictions on counts 7 through 9 are reversed. The sentence is modified by striking the three consecutive eight-month terms imposed on counts 7 through 9. The total prison term is therefore reduced by 2 years, from 45 years 8 months to 43 years 8 months. The judgment as thus modified is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

12