J-S55020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICKEY McGINNIS, | : | |
| | : | |
| Appellant | : | No. 16 WDA 2020 |

Appeal from the Judgment of Sentence Entered December 4, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0011014-2018

BEFORE:  BOWES, J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY McCAFFERY, J.:                    **FILED: JUNE 28, 2021**

Appellant, Rickey McGinnis, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, seeking relief from his jury convictions for rape of a child, involuntary deviate sexual intercourse (IDSI) with a child, incest of a minor,[1] and related sexual offenses.  On appeal, he argues the trial court erred in denying his proffer of expert testimony regarding false memories.[2]  We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(c), 3123(b), 4302(b)(1).

[2] As we discuss **infra**, Appellant's argument pertains to 42 Pa.C.S. § 5920(b)(1), which provides the following: "In a criminal proceeding [for a sexual offense under 18 Pa.C.S. Chapter 31,] a witness may be qualified . . . as an expert [in the areas of] understanding the dynamics of sexual violence,
*(Footnote Continued Next Page)*

Appellant's convictions result from the sexual assault of his minor son J.M., who was born in 2007.[3]  J.M. lived with his mother, S.W., who had an "on-again-off-again relationship" with Appellant.  N.T. Trial, 9/9/19, at 227. **See** N.T. Trial, 9/9/19, at 222.[4]  On January 31, 2013 — after S.W. and Appellant had separated — J.M., then five years old, disclosed to his mother, "[M]y dad hurt my butt."  **See id.** at 222, 226; N.T. Hearing, 8/15/19, at 18. When S.W. asked J.M. to clarify, J.M. "pull[ed] his pants down[,] point[ed] back to his butt and . . . said, '[H]e put a hole back there[,]" and "[I]t felt like it was knives."  N.T. Trial at 222-23.  At this time, it had been "months" since the last time Appellant saw J.M.  **Id.** at 227.

---

victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted."  **See** 42 Pa.C.S. § 5920(b)(1). Subsections 5920(b)(2) and (3) provide such an expert witness "may testify to facts and opinions regarding specific types of victim responses and victim behaviors[,] but any "opinion regarding the credibility of any other witness, including the victim, shall not be admissible."  42 Pa.C.S. § 5920(b)(2), (3).

[3] Appellant refers to his son as "JW" in his brief.  **See** Appellant's Brief at 3. In accord with the trial court's opinion and Commonwealth's brief, we will refer to Appellant's son as J.M.  **See** Trial Ct. Op, 2/24/20, at 3; Commonwealth's Brief at 5.

[4] The trial transcript, which is one single volumes, covers three days' proceedings, from September 9 through 11, 2019.

The next day, S.W. took J.M. to see the doctor.  N.T. Trial at 226.  At some time, S.W. took J.M. to the hospital,[5] where S.W. was advised to make a report with the North Versailles Police Department.  *Id.* at 227.  S.W. did so, on the day after the hospital visit, and was told someone would contact her for a "forensic interview."  *Id.* at 227-28.

At this juncture, we note Allegheny County Police Detective Timothy Stetzer testified, at trial, that in cases of child sexual assault, victims ages thirteen years old and younger "are kind of susceptible to how you ask questions and there is a proper methodology as to how to interview them."  N.T. Trial at 177.  He explained that forensic interviews are thus used to assess a child accuser's "qualification" to testify at trial, meaning the child's ability to: "tell the difference between the truth and a lie[;]" possess "common knowledge of things like . . . what's inside[ or] outside, what's on top, what's underneath, colors, numbers, [and] date of birth[;]" and demonstrate "a cognitive level of understanding so that we know when they tell us something, . . . it's likely the truth, [and] they can articulate what really happened."  *Id.* at 178-79.  Forensic interviews are administered outside the custodial parent's presence, conducted "by a third party [using] non-leading questions[ and] observed by the police."  *Id.* at 178, 184.  Detective Stetzer also emphasized

_____

[5] S.W.'s trial testimony is not clear as to whether the visit to the "doctor," on the day following J.M.'s disclosure, was the same visit to the "hospital."  *See* N.T. Trial at 226-27.

that children ages three to four are "rarely" qualified, and children ages "five and six are still tough. As they get older, it's easier[.]" *Id.* at 179. Where "an allegation exists but the victim isn't able to articulate [the incident] sufficiently," law enforcement recommends counseling to aid in developmental progression, so the child "can articulate things and get comfortable talking about [the assault.]" *Id.* at 179-80.

On February 11, 2013 — approximately 11 days after J.M.'s disclosure to his mother — Detective Stetzer's partner, Allegheny County Detective Todd Dolfi, witnessed a forensic interview of J.M. N.T. Trial at 178, 183. At the time, five year old J.M. made a "disclosure but [it was not] sufficient to file charges." *Id.* at 184. As a result, J.M.'s mother followed the recommendation that J.M. be placed in therapy. *Id.* at 229-30. J.M.'s therapist, Natalie Bencivenga, testified that during the course of their therapy, J.M. disclosed "his father[ ] had been laying on top of him and hurting him. [J.M.] was screaming. Things felt like they were inside of him, like it felt like a knife[.]" *Id.* at 131. Therapist Bencivenga explained J.M. had "a hard time articulating[,] and [a] lot of times with younger children that experience that kind of violence, we often offer them to draw a picture[sic.]" *Id.* J.M. then began to draw pictures of the incident during his therapy sessions. *Id.* At trial, Therapist Bencivenga described one drawing depicting J.M. "on the left . . . with the sad face and . . . that is supposed to be his buttocks[,] and

then the man [ ] smiling is his father[,] and he said his father was getting on top of him and then he would pee on him."[6] *Id.* at 136.

On October 2, 2013, eight months after his first interview, J.M. sat for a second forensic interview in the wake of "another disclosure from counseling[.]" N.T. Trial at 180. Detective Stetzer testified that both he and Detective Dolfi witnessed the interview, and although "[w]e did have a little more disclosure[, w]e still had issues qualifying [J.M.] as a witness." *Id.* at 181. Detective Stetzer further explained that J.M.:

> did a little bit better recounting[, J.M.] still had a little bit [of] trouble with colors. The difference between what's real and not real, that was a big one we ran into. For kids at that age [it] is not uncommon[,] but whether it's common or not, we have to have that to be able to qualify them as a witness and we didn't have that at this time.

*Id.* at 181-82. The detectives recommended that J.M. continue "therapy until such time as he can disclose suitable for us to be able to proceed." *Id.* at 182.

J.M. continued therapy. *See* N.T. Trial at 182. From February of 2017 through July of 2018, ten-year-old J.M. treated with therapist Bryce Shirey. *Id.* at 148. Therapist Shirey testified, "I [sic] was pretty clear from the beginning that we were working more with trauma and trying to help [J.M.]

---

[6] The trial court opined, "In this context, this statement refers to ejaculation and not urination, but that at the child's age, he would not have known the difference." Trial Ct. Op. at 4 n.2.

get through his story and build skills to be able to deal with that." *Id.* at 158. Approximately six months into their treatment, J.M. disclosed "[t]hat his father penetrated him in the buttocks" with "his penis." *Id.* at 149, 153. Therapist Shirey also stated that J.M. "didn't usually explain everything outright. He did better with drawing a picture and then started to explain what the picture was about." *Id.* at 150. After J.M. and Therapist Shirey discussed "the trauma narrative that [J.M.] created," as part of his treatment, J.M. shared it with his mother. *Id.* at 153-54.

In June of 2018, Allegheny County Police Detective Edward Watts was assigned to J.M.'s case following J.M.'s disclosure of the abuse to Therapist Shirey. N.T. Trial at 187. Detective Watts then scheduled 11-year old J.M. for a third forensic interview, after which Detective Watts believed J.M.'s disclosure sufficient to qualify him as a witness, and for charges to be brought against Appellant. *Id.* at 187-88, 191-92. Following the forensic interview, Detective Watts took statements from several witnesses, including Therapists Bencivenga and Shirey, and collected the booklet of drawings J.M. made during therapy. *Id.* at 192-93.

On August 17, 2018, five and a half years after J.M.'s first disclosure, Appellant was charged with rape of a child; IDSI with a child; incest of a minor; indecent exposure; endangering welfare of children; and corruption of

minors.[7]  On May 13, 2019, the Commonwealth filed a notice of intent to offer, pursuant to 42 Pa.C.S. § 5920, the expert testimony of Jamie Mesar, MSW, about how children disclose sexual abuse generally.

In response, Appellant filed a motion *in limine* to preclude Ms. Mesar's testimony, as well as a motion to proffer his own expert witness on false memories in children, cognitive psychologist Bruce Chambers, Ph.D., in rebuttal.  Appellant attached a letter from Dr. Chambers, which outlined his testimony about false memories would include:

- The role of interview bias[ ]
- The effects of repeated questioning.
- The tainting effects of suggestive interviewing techniques
- Role of suggestion in delayed recall of child sexual abuse
- Age differences in reliability of reports[ ]
- Source Monitoring: Distinguishing Reality from Fantasy[ ]
- Creating false memories

Letter to Appellant from Bruce Chambers Ph.D, 8/5/19, at 1-2; ***see also*** N.T. Hearing, 8/19/19, at 23-28.  Dr. Chambers would not testify about J.M. specifically, but rather the topic of false memories generally.  We note Appellant additionally filed a motion to preclude J.M.'s drawings.

On August 15, 2019, the trial court held a hearing.  It permitted the Commonwealth to call Ms. Mesar as an expert witness under Section 5920. ***See*** N.T. Hearing at 3.  With respect to Appellant's proposed expert witness, Dr. Chambers, the trial court stated it was "not aware of any testimony of this

_____

[7] 18 Pa.C.S. §§ 4304(a)(1), 6301(a)(1), 3127(a).

nature ever provided in Allegheny County," a point which Appellant conceded.

*Id.* at 23. The court found Dr. Chambers' testimony could not be admitted under Section 5920 (discussed *infra*) and reasoned instead, "at a minimum we need a *Frye*[8] hearing." *Id.* The court explained:

> I don't think [Dr. Chambers' testimony] falls under [Section 5920] to help a jury understand the behaviors of children who are victims of sexual assault, . . . like the fact that children don't promptly report and there are many reasons for it. The fact that children have no specific single behavior that typifies what you might expect a child to do after being a victim, such as [making a] report or [being] afraid of the perpetrator, that kind of thing, that's 5920 testimony. So with regard to recovered memories, all that is a different area of expertise, specifically challenging the credibility of this witness' testimony, attacking the credibility of it. And very much will be fact-based specific to this child. So [a]gain, at a minimum, we would need a *Frye* hearing to determine whether it's credible [and] generally accepted science.

*Id.* at 28. The court requested case authority addressing the type of evidence that Dr. Chambers would proffer, Dr. Chambers' *curriculum vitae*, as well as information as to whether Dr. Chambers has testified as an expert in this area in other Pennsylvania judicial proceedings[9] or been subject to a *Frye* hearing. *Id.* at 24, 29.

---

[8] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (holding, novel scientific evidence is admissible if the methodology underlying the evidence has general acceptance in the relevant scientific community); *see also Commonwealth v. Walker*, 92 A.3d 766, 789–90 (Pa. 2014).

[9] Appellant's counsel responded he "believed" Dr. Chambers had testified in other Pennsylvania judicial proceedings. N.T. Hearing at 24.

On August 19, 2019, Appellant filed a brief in support of admitting Dr. Chambers' testimony. The next day, on August 20th, the trial court entered an order denying Appellant's proffer of Dr. Chambers' testimony. Order, 8/20/19. The trial court reiterated the testimony does not fall within the purview of 42 Pa.C.S. § 5920, as it did "not relate to 'the dynamics of sexual violence, victims['] responses to sexual violence [or] the impact of sexual violence on victims[.]" *Id.* at 1. The court further stated Appellant did not provide Dr. Chambers' *curriculum vitae* nor explain whether Dr. Chambers has been qualified to testify as an expert in any area, and thus the Commonwealth could not meaningfully respond to whether a *Frye* hearing was appropriate. *Id.* Finally, the court concluded Dr. Chambers' testimony would "invade[ ] the province of the jury to determine credibility," and thus was not admissible under **Commonwealth v. Pugh**, 101 A.3d 820 (Pa. Super. 2014) (*en banc*). Order, 8/20/19, at 2. **See Pugh**, 101 A.3d at 821 ("[E]xpert testimony regarding false confessions is impermissible as it provides no pedagogical purpose and interferes with the jury's exclusive duty to assess the credibility of witnesses.").

On August 27, 2019, the trial court held a competency hearing for J.M. and deemed him competent to testify at trial.

Appellant's charges proceeded to a jury trial on September 9, 2019. The Commonwealth called Ms. Mesar as an expert in child sexual abuse, pursuant to Section 5920. She testified to the following: there is no "normal way in

which children disclose sexual abuse," and instead, the "process" of disclosure "is not the same for any one person." N.T. Trial at 54. The relationship between the abuser and the victim, and the abuser's "closeness with" or supervision of a child may affect the disclosure by a young child. *Id.* at 57. There is likewise no "normal way in which . . . victims behave," as "[c]hildren react very different[ly] to maltreatment, trauma, and things that occur in their life[.] *Id.*at 58. Some children may never disclose sexual abuse. *Id.* at 60.

Additionally, J.M., who was then 12 years old, testified about the drawings he made in therapy and stated his father "[p]ut his penis in my butt." N.T. Trial at 89. The Commonwealth also called to testify, *inter alia*: J.M.'s mother, S.W.; Detectives Stetzer and Watts; and Therapists Bencivenga and Shirey.

Appellant testified in his own defense, claiming he was not made aware of J.M.'s allegations until October of 2013, he did not rape J.M., nor did he engage in any sexual contact with him. N.T. Trial at 298, 301. Appellant also presented a supervisor or colleague as a character witness, who testified he knew of Appellant's reputation as being nonviolent and law-abiding. *Id.* at 323-24.

The jury found Appellant guilty on all counts. On December 4, 2019, the trial court sentenced Appellant to an aggregate term of 14 and a half years to 29 years' incarceration, and 5 years' probation. Specifically, Appellant received: (1) 156 to 312 months' incarceration and 5 years' consecutive

probation for rape of a child; (2) 18 to 36 months' consecutive incarceration for incest of a minor; and (3) 5 years' concurrent probation for endangering welfare of children, corruption of minors and indecent exposure.[10] Appellant is also subject to a no contact order with his son J.M.; lifetime registration under the Pennsylvania Sex Offender Registration and Notification Act;[11] and court costs of $1067.71. Order, 12/4/19.

On January 3, 2020, Appellant filed a notice of appeal and timely filed a Pa.R.A.P. 1925(b) concise statement on January 27th. On February 24, 2020, the trial court filed an opinion in response.

Appellant presents the following issue for our review:

The trial court abused its discretion under state law and violated [Appellant's] state and federal constitutional rights to present a complete and meaningful defense when it refused to allow trial counsel to present Dr. Bruce Chambers's "generic" expert testimony regarding false memories, namely how certain interactions with authority figures, interview techniques, and cognitive limitations of children can manufacture false memories in children. U.S. Const. admts. 6, 8, 14; Pa. Const. art. I, §§ 8, 9.

Appellant's Brief at 1. Although Appellant presents one question for our review, his 57-page brief advances several discrete arguments, which we address *seriatim* below.

---

[10] Appellant's sentence for IDSI with a child merged with his sentence for rape of a child.

[11] 42 Pa.C.S. §§ 9799.51 to 9799.75.

For ease of review, we first set forth the applicable standard of review and relevant authority:

It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. Indeed:

When a trial court comes to a conclusion through the exercise of its discretion, there is a heavy burden on the appellant to show that this discretion has been abused. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power.

A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Saez*, 225 A.3d 169, 177–78 (Pa. Super. 2019) (citations and quotation marks omitted), *appeal denied*, 234 A.3d 407 (Pa. 2020).

Pennsylvania Rule of Evidence 702 governs the admissibility of expert testimony. Expert testimony is generally admissible if: the witness holds specialized knowledge "beyond that possessed by the average layperson;" such "knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" and "the expert's methodology is generally accepted in the relevant field." *See* Pa.R.E. 702(a)-(c).

We also note the relevant statutory language in 42 Pa.C.S. § 5920:

**(a) Scope.—**This section applies to all of the following:

*   *   *

(2) A criminal proceeding for an offense under 18 Pa.C.S. Ch. 31 (relating to sexual offenses).

**(b) Qualifications and use of experts.—**

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, **that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.**

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) **The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible**.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S. § 5920(a)(2), (b)(1)-(4) (emphases added).

"It is well-settled that expert testimony on the issue of a witness's credibility is impermissible, as it encroaches on the province of the jury to make such determinations." *Commonwealth v. Jones*, 240 A.3d 881, 896 (Pa. 2020). "There has been a long-standing policy in this Commonwealth of protecting the jury's prerogative to determine credibility from the undue influence that accompanies expert testimony on the subject of credibility of witnesses." *Pugh*, 101 A.3d at 822.

- 13 -

First, Appellant argues the trial court should have permitted Dr. Chambers' expert testimony about false memories, because: (1) it is "challenging to elicit information from young children without asking specific, leading questions;" (2) "young children are particularly deferential to adults' beliefs;" (3) "young children have special difficulty when identifying the sources of their beliefs;" (4) here, there was no physical evidence of, nor eyewitness to, any sexual abuse by Appellant against J.M.; (5) J.M. did not mention "the anal sex narrative" until October 2013, after nine months of therapy, and this "narrative was as non-descript as could be;" and (6) J.M. "underwent another four years of therapy before he wrote his trauma narrative." Appellant's Brief at 38-40.

Appellant maintains his proffer of Dr. Chambers' testimony was "to equal the playing field because of [Section] 5920." Appellant's Brief at 41. Appellant relies on the dissenting opinion in *Commonwealth v. Olivo*, 127 A.3d 769 (Pa. 2015), in arguing that Section 5920 experts "improperly . . . bolster[ ] or attack[ ] a victim's credibility" "under the guise of educating jurors on the varying reactions to sexual violence." Appellant's Brief at 42-43, *citing Olivo*, 127 A.3d at 782 (Eakin, J., dissenting). On this premise, Appellant also claims the trial court erred in admitting the Commonwealth expert Jamie Mesar's Section 5920 "profile" testimony about behavior patterns of sexually abused children. Appellant reasons Mesar's testimony improperly bolstered J.M.'s credibility, and allowed other witnesses to confirm that J.M.

displayed the described behaviors, including "why [J.M.] didn't more quickly report the alleged abuse." *Id.* at 41-43. Appellant maintains Dr. Chambers' false memories testimony was offered in rebuttal to Mesar's testimony, and thus was admissible under Section 5920(b)(4), as well as *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014). Appellant's Brief at 46-47. We conclude no relief is due.

We begin by reviewing Appellant's proffer of Dr. Chambers' testimony. The trial court found "that [Appellant] would call Dr. Chambers to testify regarding false memories in children, or . . . to [the] 'suggestibility of children and the concomitant possibility of distorted or coerced recollections[.]'" Order, 8/20/19, at 1. The court also found Dr. Chambers' "testimony would be used exclusively to undermine [J.M.'s] credibility[.]" Trial Ct. Op. at 8. Moreover, Appellant admits that "Dr. Chambers's 'generic' expert testimony would've been used to undermine the credibility of . . . [J.M.]'s testimony that his anal rape allegation is based on a real memory, not an implanted memory." Appellant's Brief at 37 (emphases removed).

On this proffer, we decline to find the trial court's order denying Dr. Chambers' false memory testimony was manifestly unreasonable, partial, prejudiced, biased, ill-willed, or clearly erroneous. *See Saez*, 225 A.3d at 177–78. In *Olivo*, a majority of our Supreme Court described Section 5920 as a substantive rule authorizing expert testimony regarding varying types of victim responses and behaviors to sexual violence. *Olivo*, 127 A.3d at 780;

*see also* 42 Pa.C.S. § 5920. Accordingly, we apply the majority holding allowing such testimony, and reject Appellant's invitation to adopt the dissent.[12] *See* Appellant's Brief at 45.

Furthermore, we reject Appellant's assertion that expert testimony about false memories is admissible under Section 5920(b)(4). That subsection provides: "A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony." 42 Pa.C.S. § 5920(b)(4). We agree with the trial court that Appellant's proffer did not relate to "the dynamics of sexual violence, victim responses to sexual violence[,] and the impact of sexual violence on victims during and after being assaulted[,]" and thus, does not fall within the purview of Section 5920. *See* 42 Pa.C.S. § 5920(b)(1); Trial Ct. Op. at 8. Instead, Dr. Chambers' testimony would have focused, as Dr.

---

[12] Appellant also relies extensively on the 1992 decision in *Commonwealth v. Dunkle*, 602 A.2d 830 (Pa. 1992), in arguing Mesar's "profile" testimony improperly bolstered J.M.'s credibility. Appellant's Brief at 41, 44-45. However, as noted by Appellant in his brief, "[t]he General Assembly . . . effectively overruled *Dunkle* with 42 Pa.C.S. § 5920." Appellant's Brief at 41. *See Jones*, 240 A.3d at 896 ("[W]e . . . hold that Section 5920 effectively overruled *Dunkle* to the extent that case can be read as categorically prohibiting expert testimony concerning victim behavior in response to sexual abuse due to it being within the ken of laypeople and not requiring expert analysis. . . . [However,] we hold that *Dunkle* remains valid insofar as it precludes expert testimony concerning victim responses and behaviors that touch upon witness credibility, but decline to find that the case categorically precludes expert testimony concerning victim behavior in response to sexual abuse.").

Chambers' letter averred, exclusively on "the role of interview bias; the effects of repeated questioning; the tainting effects of suggestive interviewing techniques; role of suggestion in delayed recall of child sexual abuse; age differences in reliability of reports; Source Monitoring: Distinguishing Reality from Fantasy; and creating false memories." *See* Letter to Appellant from Bruce Chambers Ph.D, at 1-2; *see also* N.T. Hearing at 23-28. As a result, Dr. Chambers' testimony falls outside of the scope of Section 5920. *See* 42 Pa.C.S. § 5920(b)(1).

Next, the trial court was also within its discretion when precluding Dr. Chambers' testimony on the ground it "would be used exclusively to undermine [J.M.'s] credibility[.]" *See* Trial Ct. Op. at 8. Appellant concedes that "Dr. Chambers's 'generic' expert testimony would've been used to undermine the credibility of . . . [J.M.]'s testimony that his anal rape allegation is based on a real memory[.]" *See* Appellant's Brief at 37 (emphasis removed). For that reason, as stated above, the trial court did not err in concluding that Dr. Chambers' testimony is prohibited, since it would invade the province of the jury's function to determine issues of credibility. *See* 42 Pa.C.S. § 5920(b)(3); *see also Jones*, 240 A.3d at 896. Although Appellant purports the "testimony wouldn't have directly spoken to whether [J.M.] was untrustworthy, or even unreliable[,]" he then argues, "even if [the] false memories testimony would've directly commented on [J.M.]'s credibility, common sense and clearly-established due process principles would've

warranted his expert testimony because Mesar's 'profile' testimony did the exact same thing." *See* Appellant's Brief at 48. However, we reiterate, "expert testimony on the issue of a witness's credibility is impermissible, as it encroaches on the province of the jury to make such determinations." *See Jones*, 240 A.3d at 896. Therefore, we do not disturb the trial court's preclusion of Dr. Chambers' false memories testimony. *Id.*

Accordingly, we need not address Appellant's argument the testimony is otherwise admissible under *Walker*, 92 A.3d 766 (holding admission of expert testimony in the field of human memory, perception, and recall, for purposes of challenging eyewitness identification of defendant, was not *per se* impermissible, **but subject to trial court's discretion**).

Appellant's second argument is that a *Frye* hearing is required only for novel science. Appellant's Brief at 49, *citing Commonwealth v. Dengler*, 890 A.2d 372 (Pa. 2005). He maintains, "There's nothing novel about the cognitive psychology principles regarding false memories in children" and thus, a *Frye* hearing was not required. *Id.* at 49, 51, *citing Commonwealth v. Delbridge*, 855 A.2d 27 (Pa. 2003). Appellant insists that by creating a "pre-trial mechanism" through which a defendant may challenge whether a child accusers' competency has been "taint[ed]" by "'the implantation of false memories or distortion of actual memories through improper and suggestive interview techniques[,]'" *Delbridge* "acknowledged the validity of the

- 18 -

cognitive psychological research behind false memories in children[.]" *Id.* at 50-51, *citing* **Delbridge**, 855 A.2d at 30, 35 (emphasis removed).

On our review, a **Frye** hearing was not necessary because the trial court was within its discretion to find Dr. Chambers' testimony "would be used exclusively to undermine [J.M.'s] credibility," and the testimony is therefore inadmissible under **Jones**, 240 A.3d at 896. **See Saez**, 225 A.3d at 177–78; Trial Ct. Op. at 8; Appellant's Brief at 49.

Third, Appellant argues that his right to challenge J.M.'s credibility was not waived "simply because he didn't request a pre-trial taint hearing." Appellant's Brief at 54-55. Instead, he maintains he was not required to request a taint hearing because such a hearing goes to a witness's **competency**, whereas here, he was challenging J.M.'s **credibility**. *Id.* Appellant asserts that "challenging the credibility of the [Commonwealth's] key witness is a fundamental constitutional right." *Id.* at 54, *citing* **Crane v. Kentucky**, 476 U.S. 683 (1986).

Our extensive review of the record, including Appellant's Pa.R.A.P. 1925(b) concise statement, reveals that Appellant asserts this claim for the first time on appeal. Although the right to present "a meaningful defense strike[s] at the heart of due process of the law[,]" **Commonwealth v. Kennedy**, 305 A.2d 890, 892–93 (Pa. 1973), a due process claim can be waived if raised for the first time on appeal. **See Commonwealth v. Murray**, 83 A.3d 137, 27 (Pa. 2013). **See also** Pa.R.A.P 302(a) ("Issues not raised in

the trial court are waived and cannot be raised for the first time on appeal.");
*Commonwealth v. Colavita*, 993 A.2d 874, 891 (Pa. 2010) ("[C]ourts should not reach claims that were not raised below."). Moreover, Appellant fails to cite the place in the record where he raised his constitutional challenge. *See* Pa.R.A.P. 2117(c)(1)-(3) ("Where . . . an issue is not reviewable on appeal unless raised or preserved below, the statement of the case shall . . . specify: (1) The state of the proceedings in the [trial court] at which . . . the questions sought to be reviewed were raised[;] (2) The method of raising them[; and] (3) The way in which they were passed upon by the court."), 2119(e) ("Where . . . an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth . . . either a specific cross-reference to the page . . . of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information."). Accordingly, Appellant's constitutional claim is waived.

Finally, Appellant's remaining argument, that "it is reasonably likely the trial court's refusal to admit Dr. Chambers's testimony may've impacted the jury's verdict[,]" is waived for the same reason. *See* Appellant's Brief at 41, 44-45, 55; *see also* Pa.R.A.P. 302(a); *Colavita*, 993 A.2d 874. Appellant does not cite to the place in the record where he raised this claim before the trial court, and our review of the record reveals he did not. Therefore, no relief is warranted.

As we conclude no relief is due on Appellant's claims, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes files a concurring memorandum.

Judge Colins files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2021