**[J-69-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 10 WAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered December |
| | : | 23, 2020 at No. 176 WDA 2020, |
| v. | : | affirming the convictions and |
| | : | vacating the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| RYAN MICHAEL DUNN, | : | Allegheny County entered |
| | : | September 11, 2019 at No. CP-02- |
| Appellant | : | CR-0014780-2018, and remanding. |
| | : | |
| | : | ARGUED:  October 26, 2022 |

## OPINION IN SUPPORT OF AFFIRMANCE

**JUSTICE MUNDY**                                    **DECIDED:  June 23, 2023**

### I. Introduction

This Court granted discretionary review to address the notice requirement for the admission of expert testimony under 42 Pa.C.S. § 5920 (permitting expert testimony concerning victim responses and behaviors to sexual abuse in certain criminal proceedings) as it relates to Pa.R.Crim.P. 573 (concerning pretrial discovery and inspection in criminal proceedings).  We hold that Rule 573 applies to Section 5920, and that the trial court erred as a matter of law in concluding the Commonwealth's last-minute disclosure of an expert witness report did not violate Rule 573.  As to the proper remedy, with this Court being equally divided on whether the Commonwealth's error prejudiced Appellant Ryan Michael Dunn, the Superior Court's order denying relief is affirmed.

## II. Background

Dunn was charged with various sexual offenses related to the repeated sexual abuse of his girlfriend's daughter ("the victim"). The abuse began in June 2015 when the victim was thirteen years old and lasted for approximately two and one-half years. Dunn's trial for these offenses was scheduled for June 4, 2019. On the night before trial, at 4:25 p.m., the Commonwealth informed Dunn via email of its intent to call Jamie Mesar, MSW, as an expert witness pursuant to Section 5920. The Commonwealth attached to its email a report in the form of a letter from Mesar, dated May 31, 2019, providing an outline of her proposed testimony concerning the typical ways children disclose, react to, and cope with sexual abuse. She then detailed specific topics she was prepared to discuss within these three categories:

> Disclosure of abuse and children's behaviors regarding disclosure:
> - Children who disclose abuse often do not disclose right away and the disclosure may be initially tentative and/or gradual over a period of time.
> - Many children who have been victims never disclose their abuse for a wide variety of reasons (threats, fear, relationship to the abuser, unintended consequences of the disclosure, bribes, shame)[.]
> - Denial of the abuse or recantation of the allegations are not uncommon[.]
>
> Victim behavior at the time of the abuse:
> - There is no "normal" response for all victims. Child sexual abuse victims experience a wide range of emotions and responses[.]
> - Some victims (especially young victims and those who have experienced multiple incidents of child sexual abuse) may not know they have been a victim of child sexual abuse[.]
> - Child sexual abuse victims may feel helpless and show accommodating behaviors.
>
> Victim behavior after disclosure[:]
> - There is no "standard" response following a disclosure. Some children display emotional and behavioral changes and others do not. If a child does display an emotional/behavioral change they can vary by intensity and type. Others['] responses to a child's disclosure

greatly impacts the short terms and long term response of a child sexual abuse victim.

Mesar Letter, 5/31/19, 1-2. The letter also included citations to several articles that might be discussed during the course of Mesar's testimony. The Commonwealth further provided Dunn with a copy of Mesar's curriculum vitae detailing her educational background and professional experience.

The following day, Dunn filed various motions in response to the Commonwealth's proposed expert testimony but never explicitly requested a continuance. Among these, Dunn filed a motion to compel the preparation and disclosure of an expert witness report. He asserted that "[n]o expert report has been generated or provided detailing the substance of the facts to which the expert is expected to testify, the actual opinions arrived upon by the expert, or the basis or grounds for said opinion." Motion to Compel, 6/4/19, at 3. As a result, Dunn maintained he was unable to "fairly or adequately confront said expert testimony, or seek the opinion of his own expert, within the generation of a report by the Commonwealth's opinion witness. Preparation and disclosure of such a report is appropriate under Pa.R.Crim.P. 573(B)(2)(b)."[1] *Id.* Dunn also filed a motion to preclude Mesar's testimony for similar reasons. Motion to Preclude, 6/4/19, at 2-3.[2]

---

[1] Rule 573(B)(2)(b) provides as follows:

> (b) If any expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

Pa.R.Crim.P. 573(B)(2)(b).

[2] Dunn filed an additional motion arguing Mesar's testimony did not comport with the standards set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (outlining the test under which novel scientific testimony is admissible), and requested a hearing on

The trial court held a hearing on Dunn's motions, after which it denied his requests and proceeded with the trial as scheduled. In reaching its decision, the trial court focused heavily on the admissibility of Mesar's testimony under Section 5920 but did not directly address Dunn's argument that the Commonwealth's tardy disclosure was problematic:

> **[The Commonwealth]:** [The] Commonwealth intends to call Jamie Mesar from the Child Advocacy Center to have her testify. As you know, the way we normally call her is to have her answer hypothetical questions. She has not reviewed anything specific to this case. She's not met with this victim. She's not reviewed the police records or any of the preliminary hearing testimony, so she would be testifying as an expert answering hypotheticals. And just so the record's clear, Your Honor, I did provide [defense counsel] via e-mail both a letter that Ms. Mesar generated which details exactly what she will be testifying to based upon her expertise as well as her CV, which lists her entire background and professional experience.
>
> **The Court:** This is under the statute perfectly admissible testimony. It's not uncommon in a delayed report to explain for the jury . . . . It is generic in nature, simple to explain to jurors the concept of delayed report[ing] and not specific in any way to the facts of this case.
>
> **[Defense Counsel]:** I understand, Your Honor. Just for the record, that's part of my objection to the introduction of the testimony, that it has really nothing to do with this case and is generic and generalized conversation about things that may not even apply to this matter. But the problem that we have and what I put in my motion is we – getting this one the eve of trial, we have no opportunity to confront this testimony by doing our own research, consulting with our own expert for possible rebuttal expert testimony. There might be a divergence of opinions based upon what the proposed testimony would be.
>
> Instead of just accepting it as is and unchallenged, I think my client has the right to confront this witness as well as any other, and we would appreciate the opportunity to conduct our own research and consult with our expert.
>
> **The Court:** So[,] when did you receive the – when was the notice filed?

---

that issue. The trial court denied this motion. Dunn did not raise any further challenges regarding whether Mesar's testimony satisfied the *Frye* test. The only issue before us concerns the Commonwealth's belated disclosure.

**[The Commonwealth]:** Well, Your honor, we just – I did send him the information yesterday. The statute doesn't actually require a time frame within which notice has to be provided and that's actually because the statute itself allows for either party to call a witness to testify in this manner. So[,] the Commonwealth doesn't have to provide a pretrial notice of this because the defense is on notice. The statute permits them to do the very same thing.

. . .

**The Court:** So[,] it's been clear for some time now that no *Frye* hearing is necessary. If the statute doesn't require notice, then it would be the typical notice requirements, and this is an expert that either side could call. It's not even objectionable, to my knowledge it's a delayed report.

N.T. Motion Hearing, 6/4/19, at 4-9.

At trial, the Commonwealth presented the testimony of Mesar, the victim, as well as two officers involved in the investigation. As reflected by the trial transcript, the Commonwealth's direct examination of Mesar spans just under twenty pages. Mesar first discussed the topic of disclosure. She explained "[t]here is not a normal" in terms of the amount of information disclosed, the manner in which victims disclose, or whom they choose to tell. N.T. Trial, 6/5-10/19, at 90. She also indicated disclosure can be affected by the victim's relationship with the perpetrator, such as instances where there is familial abuse, due to the effect it may have on the victim's relationship with the abuser and on the family as a unit. In terms of familial abuse, Mesar also discussed the concept of grooming, whereby an abuser may start with small gestures to see how a child reacts before escalating to sexual abuse. *Id.* at 90-97.

Mesar next discussed the topic of victim behavior during sexual abuse, explaining that "[e]veryone reacts to their victimization personally." *Id.* at 97. She explained that some victims disclose their abuse and move forward, while others may fixate on the abuse. Mesar also explained that some victims may become "excellers" in terms of academics or extracurriculars in an attempt to regain control, while others may become avoidant of relationships with others and decline participation in academics or

extracurriculars. She also explained that some victims may engage in self-destructive behavior or develop soothing techniques. The Commonwealth then asked Mesar to discuss victims' emotional responses to sexual abuse. Mesar explained that some victims focus on the cognitive or physical sense of things while abuse is taking place, while others may cry, fight back, or do nothing. She also noted that a victim's emotional response may differ depending on his or her relationship with the abuser. In cases involving familial abuse, the victim and abuser may become closer. *Id.* at 97-102.

Mesar lastly explained that it may be difficult for victims to recall specific dates and times of abuse. At no point throughout Mesar's testimony did Dunn's attorney object on relevance grounds or otherwise. Dunn's attorney cross-examined Mesar for approximately eleven pages. Both parties then had an equal opportunity to ask additional questions during re-direct and re-cross. Following the Commonwealth's presentation of evidence, Dunn testified in his own defense and denied that any sexual abuse had occurred.

The jury ultimately convicted Dunn of statutory sexual assault, involuntary deviate sexual intercourse of a person less than sixteen years of age ("IDSI"), aggravated assault of a person less than sixteen years of age, indecent assault of a person less than sixteen years of age, corruption of minors, and endangering the welfare of a child. The trial court imposed a sentence of 214 to 428 months' imprisonment, followed by five years' probation. Dunn filed a post-sentence motion, followed by a supplemental post-sentence motion, both of which were denied by operation of law. He then filed a direct appeal arguing, *inter alia*, that the trial court improperly denied his motion to exclude Mesar's testimony, or alternatively, to order the preparation of an expert witness report, thereby violating his due process and confrontation rights.

The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) addressing these claims collectively. It reasoned that admission of Mesar's testimony was appropriate given Section 5920 and Rule 573 do not contain notice requirements. The trial court further opined that Dunn was on notice that the Commonwealth may call an expert under Section 5920, as the statute permits either party to do so. It further explained that the Commonwealth turned over the only document that could have qualified as an expert report under Rule 573(B)(2)(b) and its decision not to order preparation of an additional expert witness report was discretionary and found to be unnecessary. Trial Ct. Op., 6/24/20, at 5-6. The trial court lastly addressed Dunn's argument concerning the development of rebuttal evidence, explaining:

> It is unclear from the record what [Dunn] would have intended to rebut. Any rebuttal expert witness would have to comply with the statute regardless of the existence of Mesar's report. Since Mesar's report complied with the requirements of the statute, and her testimony furthered the cause of avoiding jury confusion on this issue, this [c]ourt did not err in permitting Mesar to testify[.]

*Id.* at 6.[3]

The Superior Court unanimously affirmed in an unpublished memorandum decision. *See Commonwealth v. Dunn*, 176 WDA 2020; 2020 WL 7682502 (Pa. Super. 2020) (unpublished memorandum).[4] The panel explained that it reviews the trial court's

---

[3] After the trial court denied Dunn's post-sentence motions, the Commonwealth filed a response acknowledging that Dunn's sentence with respect to IDSI was illegal. Dunn was unable to be resentenced prior to filing his notice of appeal, as the resentencing hearing was postponed due to the COVID-19 pandemic. In its Rule 1925(a) opinion, the trial court acknowledged its sentencing error and asked that the case be remanded for a full resentencing hearing after the Superior Court rendered a decision on Dunn's remaining claims.

[4] The Superior Court rejected each of Dunn's claims, except for the trial court's admittedly improper IDSI sentence. Because the illegal sentence for this offense could upset the trial court's overall sentencing scheme, the Superior Court vacated Dunn's sentence and remanded for resentencing.

decision to admit or exclude evidence for an abuse of discretion, which "may not be made merely because an appellate court might have reached a different conclusion, but requires the result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Koch*, 106 A.3d 705, 710-711 (Pa. 2014) (citations and quotations omitted).

The panel first addressed whether the trial court erred in allowing Mesar to testify pursuant to Section 5920. It explained that Section 5920 permits a qualified expert to testify as to facts and opinions regarding specific types of victim responses and victim behaviors and does not provide a notice requirement or mandate the production of an expert report. Even so, the panel noted that the Commonwealth did inform Dunn of its intent to call Mesar under Section 5920 and provided a letter outlining her proposed testimony, which fit squarely into that permitted by the statute. In its view, Mesar's letter also adequately apprised Dunn of the subject matter of Mesar's testimony, and the defense conducted a lengthy cross-examination at trial. As to Dunn's argument concerning rebuttal evidence, the panel emphasized that Dunn had yet to produce or identify any such evidence. It also noted that Dunn was permitted to call his own Section 5920 expert in anticipation of trial regardless of whether or not the Commonwealth intended to call one. The panel therefore discerned no abuse of discretion in admitting Mesar's testimony pursuant to Section 5920.

The panel next considered Dunn's claim that the trial court erred in failing to order the preparation of an expert witness report under Rule 573. It emphasized that Rule 573 requires the Commonwealth to disclose before trial "any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control

of the attorney of the Commonwealth." Pa.R.Crim.P. 573(B)(1)(e). The panel also recounted the portion of Rule 573 applicable to experts proffered by the Commonwealth:

> If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report or examination of tests, the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

Pa.R.Crim.P. 573(B)(2)(b). It then noted that, consistent with the rule, the Commonwealth disclosed to Dunn a letter in its possession detailing the extent of Mesar's testimony. The panel further concluded the Commonwealth was not required to obtain an additional report, and the trial court properly exercised its discretion in denying Dunn's request.

The panel lastly addressed Dunn's claim as to the Commonwealth's belated disclosure of its Rule 5920 expert in light of Rule 573. It explained that Rule 573(E) gives the trial court broad discretion to impose remedies for discovery violations and "[a] defendant seeking relief from a discovery violation must demonstrate prejudice." *Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003). The panel also recognized that, like Section 5920, Rule 573 does not address the timing of disclosures. It therefore agreed with the trial court that the Commonwealth did not commit a discovery violation and that Dunn's bald assertions that the Commonwealth's late disclosure caused prejudice or affected his trial strategy were insufficient to warrant relief. The panel therefore denied Dunn's claim.

Dunn filed a petition for allowance of appeal to this Court. We granted discretionary review to address the following issue:

> Are the Superior Court's holdings that the Commonwealth (1) need not provide notice to a criminal defendant of its intent to call an expert witness pursuant to 42 Pa.C.S. § 5920 (relating to [e]xpert testimony concerning victim responses and behaviors) and (2) need not prepare and disclose a detailed expert report irreconcilable with the Superior Court's decision in

*Commonwealth v. Cramer*, 195 A.3d 594 (Pa. Super. 2018) and this Honorable Court's decision in *Commonwealth v. Jones*, 240 A.3d 881 (Pa. 2020)? Are these same holdings inconsistent with the Pennsylvania Rules of Criminal Procedure and the Due Process provisions of the United States and Pennsylvania Constitutions?

*Commonwealth v. Dunn*, 274 A.3d 719 (Pa. 2021) (per curiam).

### III. Parties' Arguments

First, Dunn emphasizes that Section 5920 merely authorizes the admission of expert testimony concerning victim responses and behaviors to sexual abuse and does not supplant any of the rules governing the admission of expert testimony. In this regard, Dunn notes this Court previously recognized Section 5920 is a substantive rule, rather than a procedural rule, that "permits both parties to present experts to testify to facts and opinions regarding specific types of victim responses and behaviors[,]" but remains silent as to its presentation. Dunn's Brief at 16-17 (quoting *Commonwealth v. Olivio*, 127 A.3d 769 (Pa. 2015)). As such, Dunn avers that expert testimony under Section 5920, like all expert testimony, is subject to the discovery mandates of Rule 573.

Dunn continues that Rule 573 requires the Commonwealth to disclose any expert opinions it intends to offer at trial. He recognizes that Rule 573 indicates the trial court may, in its discretion, order the production of an expert witness report if one has not been prepared, though one is not required. Dunn explains that although an expert report is not required in every case, there is no categorical exclusion of expert reports in cases involving expert testimony under Section 5920. Indeed, Dunn notes the Superior Court has previously explained that Section 5920 does not alter the applicability of the *Frye* test. *Id.* at 22-23 (citing *Commonwealth v. Cramer*, 195 A.3d 594 (Pa. Super. 2018)).

As to the Commonwealth's disclosure of its expert and the letter, Dunn claims the Superior Court missed the mark by focusing on the absence of internal notice provisions to conclude the Commonwealth owed no notice. Dunn argues that expert opinions like Mesar's must be "disclosed by the Commonwealth well in advance of trial and

accompanied by a report that is sufficiently particular to permit criminal defendants to meet the government's evidence." *Id.* at 25. He claims that "[a]ny other procedure deprives defendants of their due process right to a fundamentally fair trial and his right to confront the witnesses against him." *Id.*

Dunn further emphasizes this Court's recent decision in *Commonwealth v. Jones*, 240 A.3d 881 (Pa. 2020), to demonstrate notice and preparation of an expert report is required under Section 5920. He explains that in *Jones*, this Court addressed the continued validity of *Commonwealth v. Dunkle*, 602 A.2d 830 (Pa. 1992) (holding inadmissible expert testimony about typical behavior patterns displayed by child victims of sexual abuse, reasoning it was easily understood by laypersons, did not require expert analysis, and invaded the jury's province of determining witness credibility), in light of the legislature's enactment of Section 5920. We ultimately concluded that "*Dunkle* remains valid insofar as it precludes expert testimony concerning victim responses and behaviors that touch upon witness credibility, but decline[d] to find that the case categorically precludes expert testimony concerning victim behavior and responses to sexual abuse." *Jones*, 240 A.3d at 897. In light of *Jones*, Dunn maintains it is essential that expert testimony offered under Section 5920 be assessed well in advance of trial to determine whether the expert's testimony comports with the prohibition of testimony touching on witness credibility.

Based on the foregoing, Dunn asserts the Commonwealth's notice in this case did not comport with due process. He emphasizes that the Commonwealth disclosed its intent to call Mesar as a witness via email at the close of business the night before trial. In doing so, Dunn avers the Commonwealth provided a brief and inadequate letter outlining Mesar's testimony. Dunn further asserts that such late and insufficient notice is "among the clearest examples of trial by ambush" and gamesmanship. *Id.* at 38. He

avers the Commonwealth's email contained language meant to assess Dunn's willingness to accept a plea offer in light of the Commonwealth's evidence. Dunn cites a variety of federal cases where trial courts were found to have acted within their discretion by excluding expert testimony where a belated disclosure was likely to prejudice the defendant. He asserts the trial court could have, at minimum, required the Commonwealth to prepare an expert report. Relatedly, Dunn maintains Mesar's vague and boilerplate letter was insufficient to apprise him of the substance of her testimony. Mesar's testimony, though general, ultimately foreshadowed prosecutorial themes and corresponded to other testimony presented at trial. Dunn further maintains Mesar's testimony went beyond that proffered in the letter. *Id.* at 38-49.

Finally, Dunn acknowledges that Mesar never reviewed the specific facts of this case and merely intended to offer testimony as to the broad behavioral patterns of sexual abuse victims, but does not believe this willful blindness makes the testimony any less problematic. He then goes on to address the ways in which the admission of Mesar's testimony resulted in prejudice. Dunn specifically avers he was unable to conduct independent research, develop a comprehensive cross-examination, make a knowing and intelligent decision about whether to hire his own expert, make a robust pretrial challenge to the admission of the testimony, or reflect on how this testimony would bear upon all the facts. Dunn further notes that any last-minute trial preparation was derailed given the last-minute diversion. In light of the foregoing, Dunn's requested remedy is a new trial. *Id.* at 50-52.

The Commonwealth's argument focuses heavily on whether Dunn was prejudiced by the admission of Mesar's testimony. It explains that even where there has been an improper admission of expert testimony, "the defendant still bears the burden of proving he suffered prejudice from admission of the testimony." Commonwealth's Brief at 20

(quoting *Commonwealth v. Poplawski*, 130 A.3d 697, 718 (Pa. 2015)). In this regard, the Commonwealth maintains Dunn failed to demonstrate the same. It specifically avers that Dunn's characterization of the evidence as competing narratives is simply untrue. The Commonwealth points out that, in addition to the victim's account of events, it introduced extremely damning text messages Dunn sent to the victim leading up to his arrest plainly admitting guilt. *Id.* at 20-24.

The Commonwealth next argues, even ignoring the strength of its evidence, Dunn fails to demonstrate prejudice. It acknowledges that Dunn does not challenge the admissibility of Mesar's testimony under Section 5920, only whether Dunn received adequate notice and whether an additional report was necessary under Rule 573. With respect to the latter, the Commonwealth asserts that Mesar's letter met the requirements of an expert report pursuant to Section 5920 and Rule 573 and that Dunn failed to demonstrate a more detailed report was required. It explains Mesar's testimony merely informed the jury there is no "normal" behavior with respect to victims' reactions to and disclosures of sexual abuse. While Dunn claims earlier notice of Mesar's testimony would have allowed him to conduct his own research and develop appropriate rebuttal evidence, the Commonwealth points out that Dunn has yet to produce any evidence to this effect. *Id.* at 24-30. As Dunn has failed to prove prejudice, the Commonwealth claims "any discussion of Mesar's correspondence and whether or not it satisfied the prosecution's discovery obligations is purely academic." *Id.* at 30. It notes that, for the purposes of this appeal, Rule 573 merely required the Commonwealth to disclose any expert opinion in its possession, which it did. It was then within the trial court's discretion to order something more. *Id.* at 30-33.

The Commonwealth next addresses Dunn's assertion that the Superior Court's decision in this case is irreconcilable with both *Cramer* and *Jones.* It explains that the

Superior Court's decision in *Cramer* merely found that Section 5920 testimony does not alter the applicability of *Frye*, but nonetheless rejected the assertion that a *Frye* hearing was required because Cramer failed to demonstrate the Commonwealth's expert's testimony that victims respond counterintuitively to sexual abuse was novel scientific evidence. *Id.* at 34-35 (citing *Cramer*, 195 A.3d at 605-607). As to *Jones*, the Commonwealth explains that expert testimony vouching for victim credibility is never allowed, as explicitly noted in Section 5920. The Commonwealth contends there is nothing in the instant case that would tend to suggest Mesar's testimony violated this prohibition. Mesar provided general testimony, never reviewed the specific facts of this case, and responded to hypothetical questions. Mesar's testimony therefore did not run afoul of *Jones*. *Id.* at 41-43 (citing *Jones*, 240 A.3d at 895-97).

Finally, the Commonwealth addresses the specific question of whether its disclosure of Mesar's testimony the day before trial violated the discovery rules. In its view, the Superior Court was correct in concluding it did not, as Rule 573 does not address the timing of mandatory disclosures. In any event, the Commonwealth asserts that a discovery violation can only be assessed in terms of whether the particular piece of evidence impacted the defendant. In this regard, the Commonwealth asserts that the context of this specific evidence – the accepted and non-controversial opinions of Mesar – did not prejudice Dunn. Even if it did, the Commonwealth notes that the trial court has broad discretion to choose the appropriate remedy. *Id.* at 45 (citing *Commonwealth v. Burke*, 781 A.3d 1136 (Pa. 2001)). Here, the trial court offered no remedy because it did not deem one appropriate. In light of the foregoing, the Commonwealth asks this Court to affirm the Superior Court's denial of Dunn's claim.

## IV. Analysis

### a. Application of Rule 573 and Section 5920

This Court generally reviews a trial court's evidentiary decisions for an abuse of discretion. *Commonwealth v. Gallaway*, 283 A.3d 217, 222-23 (Pa. 2022) (additional citation omitted). "An abuse of discretion is not simply an error of judgment, but is an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* at 223 (citing *Commonwealth v. Talley*, 265 A.3d 485, 550 (Pa. 2021)). Because this case hinges on our interpretation of a statute and a rule of criminal procedure, it necessarily implicates a question of law for which the standard of review is *de novo* and scope of review is plenary. *Commonwealth v. Lopez*, 280 A.3d 887, 894 (Pa. 2022) (citation omitted); *Commonwealth v. McCabe*, 265 A.3d 1279, 1287 (Pa. 2021) (additional citations omitted).

With this background, Section 5920 relevantly provides:

**(b) Qualifications and use of experts. –**

> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.

> (2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

> (3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

> (4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S. § 5920(b).  In addition, Rule 573 reads as follows:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

. . .

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

. . .

(2) *Discretionary With the Court.*

. . .

(b) If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

. . .

**(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

Pa.R.Crim.P. 573(B) – (D).

As noted above, this case does not concern the admissibility of Mesar's expert testimony under Section 5920, but only whether the trial court erred in allowing the

Commonwealth to introduce the testimony in light of its belated disclosure.[5] Section 5920 is a substantive rule that "permits both parties to present experts to testify to facts and opinions regarding specific types of victim responses and victim behaviors." *Olivio*, 127 A.3d at 780 (citation and quotations omitted). Rule 573 is a rule of criminal procedure that governs pretrial discovery and inspection and outlines both mandatory and discretionary disclosures. Rule 573(B)(1) requires the Commonwealth to disclose "any results of reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations of the defendant that are within the possession or control of the attorney for the Commonwealth[.]"

Given Section 5920 is merely a substantive rule, we have no trouble agreeing with Dunn that Section 5920 is subject to the procedural requirements for pretrial discovery and inspection in criminal proceedings under Rule 573.[6] We recognize that neither Section 5920 nor Rule 573 defines a specific timeframe in which a party calling an expert to discuss dynamics of sexual abuse must inform an opposing party or provide the discovery materials outlined therein, respectively. Contrary to the Superior Court's conclusion, however, we disagree that the lack of internal notice requirements equates to no notice requirements. Rule 573(d) imposes a continuing duty to disclose "additional evidence, material, or witnesses[,] subject to discovery or inspection[.]" Moreover, this Court has repeatedly emphasized that the purpose of Rule 573 is to "permit parties in

---

[5] In his brief, Dunn states "the instant challenge does not concern *whether* expert testimony about victim responses and behaviors is admissible – this Court has held that it is – but, rather, in the interests of promoting fundamentally fair trials, whether a party must provide reasonable notice to its opponent of its intent to admit such expert testimony at trial, along with the substance of the expert's proffered testimony in the form of a non-boilerplate expert report." Dunn's Brief at 19.

[6] The Commonwealth does not appear to challenge this point either, instead focusing on whether Dunn was prejudiced by the timing of its disclosure.

criminal matters to be prepared for trial" and that "trial by ambush is contrary to the spirit and letter of those rules and will not be condoned." *Commonwealth v. Appel*, 689 A.2d 891, 907 (Pa. 1997) (*reversed on other grounds*) (citing *Commonwealth v. Shelton*, 640 A.2d 892, 895 (Pa. 1994)).[7] Thus, Rule 573 required the Commonwealth to promptly disclose its intent to call an expert under Section 5920, as well as any expert reports in its possession.

We do not address whether Section 5920 and Rule 573 require preparation of an expert report in all cases involving testimony about victim behaviors and responses to sexual abuse because the Commonwealth did, for the purposes of Section 5920, provide an expert report in this case. Expert testimony under Section 5920 is, by nature, different than expert testimony on other subject matter, as its purpose is to inform the jury that a child victim of sexual assault may engage in behavior that may appear counter-intuitive to the layperson. As a result, the testimony elicited from expert witnesses in this area largely relates to common behavioral responses of sexual abuse victims, or stated differently, "facts and opinions regarding specific types of victim responses and victim behaviors." 42 Pa.C.S. § 5920(b)(2). Unlike many other types of expert testimony, Section 5920 experts generally abstain from reviewing the specific facts of the cases in which they testify, given the directive in Section 5920 that the expert witness abstain from discussing opinions regarding the credibility of the victim or any other witness. 42 Pa.C.S. § 5920(b)(3). Here, Mesar's letter detailed three specific categories she was prepared to discuss at trial – victim disclosure of sexual abuse, victim behavior at the time of abuse, and victim behavior following disclosure of abuse. Within these three categories, Mesar

---

[7] This case refers to Pa.R.Crim.P. 305, which was renumbered Pa.R.Crim.P. 573 in 2001.

provided bullet points setting forth precisely what would be discussed. As detailed above, Mesar's trial testimony tracked these three categories.[8]

In her Opinion in Support of Reversal ("OISR"), Justice Donohue complains that Mesar's letter was too broad and generic to adequately apprise Dunn of the substance of Mesar's testimony and that her trial testimony was ultimately more specific than that detailed in the letter. OISR, Donohue J., at 11-12. Again, Section 5920 permits testimony related to the three categories listed in Mesar's letter. Justice Donohue's objection that the letter is broad and generic ignores the purpose of Section 5920 testimony, as well as the longstanding prohibition that experts testifying in this area must avoid encroaching on the jury's province of assessing witness credibility. To the extent Dunn and Justice Donohue aver Mesar's testimony went beyond that detailed in the letter, Dunn was required to lodge a specific objection at trial. The trial court's decision to permit Mesar's testimony based on the information set forth in the letter did not give Mesar carte blanche to testify about anything, nor did it relieve Dunn of the obligation to preserve a claim that Mesar's testimony exceeded that in the letter.

With this background, we now consider whether the Commonwealth complied with its duty to promptly disclose its intent to call Mesar and Mesar's letter, which we find to be an expert report. It is unclear exactly when the Commonwealth came into possession of Mesar's letter, only that it was dated May 31, 2019.[9] Assuming the Commonwealth received the letter that day, it did not disclose the same to the defense until June 3, 2019 at 4:25 p.m., which was the night before Dunn's trial was set to begin. Even if the Commonwealth did not have the letter in its possession until the day it was disclosed to

---

[8] Because the Commonwealth provided Dunn with an expert witness report, the trial court did not abuse its discretion in denying Dunn's motion to compel the production of one. *See Gallaway*, 283 A.3d at 222-23.

[9] May 31, 2019 was a Friday.

the defense, the Commonwealth was presumably aware of its intention to call Mesar and that such a letter was forthcoming. The Commonwealth has failed to advance any support or reasoning in defense of its eleventh-hour notice or why it did not relay the information later provided in a timely manner. Based on the foregoing, the Commonwealth failed to comply with its duty of prompt disclosure under Rule 573. We decline to prescribe a specific time frame for Rule 573 disclosures in this opinion, but refer this matter to our Criminal Procedure Rules Committee to consider whether adoption of an express time period or some alternative framework would clarify any uncertainty in the rule. *See e.g., Commonwealth v. Morris*, 771 A.2d 721, 730 n.8 (Pa. 2001). We nevertheless have no trouble concluding the Commonwealth did not comply with the dictates of Rule 573 in this case.

Although we need not address whether an expert report is required in every case, in light of the fact that one was provided in this case, we reject Dunn's argument that the Superior Court's decision in *Cramer* and this Court's decision in *Jones* support such a conclusion, as both of these cases are inapposite. In *Cramer*, the Superior Court merely concluded that Section 5920 does not alter the applicability of the *Frye* test or the general rule that an expert witness's methodology must be generally accepted in the relevant field set forth in Pa.R.E. 702(c). *Cramer*, 195 A.3d at 605. In *Jones*, this Court considered whether testimony from a detective about victim responses and behaviors, when based on that detective's training, experience, and specialized knowledge, constituted expert testimony and whether such testimony was permitted from a lay witness. Within that decision, we addressed the continued validity of our decision in *Dunkle*, in which we concluded expert testimony concerning typical behavior patterns displayed by child victims of sexual abuse was inadmissible, reasoning it was easily understood by laypersons, did not require expert analysis, and invaded the jury's province of determining

witness credibility. *Dunkle*, 602 A.2d at 836-838. In *Jones*, this Court concluded that Section 5920 effectively overruled *Dunkle* with respect to its conclusion that testimony concerning typical behavior patterns of child victims of sexual abuse was inadmissible as it was understood by laypersons. We concluded "*Dunkle* remains valid insofar as it precludes expert testimony concerning victim responses and behaviors that touch upon witness credibility." *Jones*, 240 A.3d at 895-897. Dunn uses both of these cases to assert notice of an expert witness and preparation of a report is required to ensure a Section 5920 expert witness's testimony does not improperly touch upon witness credibility. Neither of these cases support the proposition Dunn makes. Unlike *Cramer*, this case does not concern the necessity of a *Frye* test. Nor does this case involve any allegation that Mesar's testimony did not comply with the prohibition that expert testimony must avoid touching upon witness credibility implicating *Jones*. This practice is also already expressly prohibited by Section 5920(b)(3).[10]

### b. Remedy

We now turn to the appropriate remedy based on our conclusion that the Commonwealth failed to comply with Rule 573. Rule 573(E) gives trial courts broad discretion in choosing the appropriate remedy for discovery violations:

> **(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

---

[10] We decline to address Dunn's constitutional claims concerning due process and confrontation having found the trial court improperly applied Rule 573. *See Ballou v. State Ethics Commission*, 436 A.2d 186, 187 (Pa. 1981) ("[W]hen a case raises both constitutional and non-constitutional issues, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds.").

Pa.R.Crim.P. 573(E). Here, the trial court declined to impose any of the remedies set forth above upon finding that the Commonwealth complied with its discovery obligations. In any event, discovery violations do not automatically entitle an appellant to a new trial; the appellant must demonstrate that the violation resulted in prejudice. *Commonwealth v. Counterman*, 719 A.2d 284, 298 (Pa. 1998). Our case law suggests that prejudice in this context requires an appellant to demonstrate that a timelier disclosure would have affected his trial strategy or otherwise resulted in prejudice in the typical outcome determinative sense. *See e.g., Commonwealth v. Chambers*, 599 A.2d 630, 637-38 (Pa. 1991); *Commonwealth v. Jones*, 668 A.2d 491, 512-13 (Pa. 1995); *Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003).

As detailed above, Dunn's prejudice argument contains several broad themes. He claims that the Commonwealth's last-minute notice prevented him from conducting independent research, developing a comprehensive cross-examination, making a knowing and intelligent decision about whether to hire his own expert, making a robust pretrial challenge to admission of the testimony, and reflecting on how the testimony would bear upon all of the other evidence presented at trial. He additionally argues that his last-minute trial preparation was derailed in light of the Commonwealth's tardy disclosure. While these concerns may very well be true, Dunn's broad and non-specific allegations are insufficient to demonstrate the degree of prejudice necessary to warrant a new trial. *See Counterman*, 719 A.2d at 298 (explaining generalized allegation of prejudice related to Commonwealth's late disclosure of exculpatory evidence did not result in prejudice).

Importantly, Dunn also never explicitly requested a continuance, which is generally "deemed sufficient to eradicate possible prejudice and enable the defendant to assimilate new information." *Commonwealth v. Rosa*, 609 A.2d 200 (Pa. Super. 1992). Rather,

Dunn filed a motion requesting the preparation of an expert report, despite the fact that one had been turned over, and another requesting the exclusion of Mesar's testimony altogether. We decline to view Dunn's filing as an effective request for a continuance, particularly in light of the fact that the Commonwealth did provide an expert report detailing the substance of its proposed testimony under Section 5920. Stated simply, Dunn never asked for a continuance to make the previously mentioned preparations following the Commonwealth's disclosure, the majority of which could have been accomplished. This Court has declined to grant relief in similar scenarios where no continuance request was made. *See Chambers*, 599 A.2d 630 (holding appellant failed to demonstrate prejudice warranting mistrial for discovery violation and emphasizing counsel's failure to request continuance); *Jones*, 668 A.2d 491 (explaining failure to request a continuance following delayed disclosure of evidence indicated no additional time or strategy was necessary to prepare).

Moreover, Dunn complains Mesar's letter was "generic" in nature and merely outlined "broad categories of information pertaining to disclosure by children of alleged sexual abuse." Dunn's Brief at 42. He goes on to aver that although Mesar's trial testimony "arguably" fell within the categories detailed in the letter, "none of the damning, case-specific opinions" adduced at trial could have been anticipated, resulting in prejudice. *Id.* at 46. First, aside from describing the letter as broad and general, Dunn fails to specify why Mesar's letter does not meet the requirements of an expert report. Rather, Dunn's chief complaint is that Mesar's trial testimony concerning typical victim responses and behaviors to abuse was consistent with the victim's testimony. That the victim testified consistently with the typical behaviors of sexual abuse victims outlined in the report does not make the report deficient or Mesar's trial testimony prejudicial. In essence, Dunn is bothered by the fact Mesar's testimony was relevant and informative,

which was its purpose. Again, to the extent Dunn believes Mesar's trial testimony went beyond that set forth in the letter, Dunn did not raise these concerns at any point by objecting to Mesar's testimony as required. The mere fact that the trial court permitted Mesar to testify on the subject matter included in the letter did not relieve Dunn of this obligation. It bears repeating, however, this Court does not find Mesar's testimony went beyond the information detailed in the report. Finally, Dunn complains of "case specific" opinions, but Mesar did not offer case specific opinions, as she was purposefully blind to the specific facts of this case in order to comply with Section 5920.

Beyond this, we further conclude that the incriminating nature of the facts in this case do not lend themselves to a finding of prejudice. The specific facts surrounding Dunn's sexual abuse of the victim are not particularly relevant and will not be recounted herein. It suffices to say that Dunn sexually abused the victim numerous times beginning in June 2015 and ending in November 2017. N.T. Trial, 6/5-10/19, at 150, 265-36. At some point before the abuse ended, Dunn sent the victim a sexually explicit photograph of the victim's mother. In January 2018, the victim informed her mother about the image which led to involvement by Children, Youth and Families ("CYF"). The victim ultimately disclosed to her therapist that Dunn had been sexually abusive and, shortly thereafter, disclosed the same to her mother. During its subsequent investigation into the abuse, the Allegheny County Police Department recovered a series of text messages from Dunn's cellphone, which Dunn sent to the victim in August and September of 2018 at which point in time the victim was sixteen years old:

> I didn't know what you see as abuse was abuse. I still love you and want to be with you, which is the definition of irony. I'm sorry. I don't know what else to do.

> You didn't do anything. I didn't know it was abuse. I didn't know how to love properly. I thought it was. I'm sorry.

You were being you, and you're lovable and worthy and precious. Please don't ever let my mistake keep you from giving that freely to the world. I didn't know I was hurting you.

I barely recognized you were too young. I believe in destiny and fate. I was wrong.

I don't know how to love you right now. I'm sorry. I'm still trying my best. I will be patient and do everything in [sic] power not to make you uncomfortable or hurt more.

I have to meet with the District Attorney tomorrow at [the] police station. If they pulled cell phone transcripts, I'm going to jail for a long time. Out of my control. It's not your fault. Never was. I don't know if you really are clueless to the whole thing, then asking questions about cell phone texts and transcripts would only arouse suspicion if they didn't yet. I'm just telling you this in the chance that I don't come back tomorrow and to let you know that I'm sorry. I have been trying to change in every way, albeit too late. I never meant to hurt you or anyone else and that I suffer from the guilt and shame of not only that but everything else of a daily basis. Sometimes hourly. Prison is most likely the next logical step. You're not at fault for anything.

N.T. Trial, 6/5-10/19, at 183-187. At trial, the victim explained that Dunn sent these messages after she disclosed receiving the sexually explicit photograph of her mother, but before anyone knew about the sexual abuse. According to the victim, Dunn was referencing the circumstances surrounding the photograph, as well as his past sexual abuse of the victim and fear that additional information may come to light during any investigation. *Id.* at 176-188. Given these admissions by Dunn, it is difficult to conclude Mesar's expert testimony prejudiced Dunn in any way, particularly as Dunn never objected to the substance of Mesar's testimony at trial.[11] As there was no resulting

_____

[11] Dunn testified in his own defense at trial, providing an explanation as to the context of these messages and denying that any of them referred to a sexual relationship between himself and the victim. For example, Dunn maintained that his references to abuse and going to jail related to sending the victim a suggestive photograph of her mother or the potential uncovering of other unrelated crimes through review of his text messages. He also claimed that some of the messages were meant to serve as an apology for creating strife in the victim's relationship with her mother due to Dunn's disparagement of her to

prejudice from Mesar's testimony or question concerning its admissibility, Dunn's only genuine complaint is that of surprise. Thus, the trial court could have simply allowed a continuance had one been requested. *See Commonwealth v. Smith*, 955 A.2d 391 (Pa. Super. 2008) ("A continuance is appropriate where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise."). The fact that it did not order one, however, does not entitle Dunn to a new trial.[12]

## V. Conclusion

In conclusion, we hold that Rule 573 applies with equal force to expert reports based on the subject matter in Section 5920, and that the trial court erred as a matter of law in concluding the Commonwealth's last-minute disclosure of an expert witness report did not violate Rule 573. As to the proper remedy, this Court being equally divided on whether the Commonwealth's error prejudiced Dunn, the Superior Court's order denying relief is affirmed. We remand this case to the trial court for resentencing as to Dunn's illegal sentencing claim addressed before the lower court.

---

the victim. Lastly, Dunn claimed the text message in which he told the victim he wanted to be with her simply meant he wished to be with her in a family dynamic. N.T. Trial, 6/5-10/19, at 458-67. The jury clearly rejected these explanations in reaching its verdict.

[12] Justice Donohue takes issue with our conclusion that Dunn failed to demonstrate the Commonwealth's discovery violation resulted in prejudice by merely citing broad and generalized complaints, coupled with his failure to request a continuance and the incriminating text messages introduced at trial. Focusing on the continuance request, Justice Donohue disagrees "that a continuance would have adequately remedied the prejudice incurred by Dunn" and "question[s] a rule that places the burden on the defendant to mitigate the Commonwealth's violation of the discovery rules and then penalizes him for not doing so." OISR, Donohue, J., at 14. At the same time, Justice Donohue acknowledges this Court has repeatedly engaged in a quasi-harmless error analysis for assessing the impact of discovery violations, placing that burden on the appellant. *Id.* at 21. Her point therefore appears to be a critique of precedent, as opposed to our application of the law. Moreover, as Justice Wecht recognizes, "[t]he resolution of the differing formulations and adoption of a uniform standard for evaluating prejudice in the context of discovery violations . . . is outside the scope of the present appeal." OISR, Wecht, J., at 9.

Justice Brobson joins this opinion in support of affirmance.